Hanan BUTNARU and Gil
Butnaru, Petitioners,

v.

FORD MOTOR COMPANY,
Respondent.

No. 00–0513.

Supreme Court of Texas.

Argued Feb. 14, 2001.

Decided June 27, 2002.

Jonathan Scott Miles, Andrew L. Kerr, Holland & Knight LLP, San Antonio, Byron W. Hodge, Lowry Foster & Hodge, Del Rio, Larry G. Berkman, Jenkens & Gilchrist, San Antonio, for Petitioner.

Paul S. Francis, Jon David Ivey, Baker & Hostetler, Alfred V. Sumpter, Oritz & Sumpter, Del Rio, for Respondent.

Justice BAKER delivered the opinion of the Court.

On December 6, 2001, we granted Ford's motion for rehearing. We withdraw our opinion dated July 7, 2001, and substitute the following in its place.

In this case, we determine whether the Texas Motor Vehicle Board has exclusive jurisdiction over a prospective car dealership transferees' claims that raise an issue about how to construe the Texas Motor Vehicle Commission Code.[1] We conclude the Board has exclusive jurisdiction to resolve only those claims and issues the Code governs. Moreover, we conclude that this exclusive jurisdiction does not extend to the prospective transferees' claims here, and thus, they do not have to exhaust administrative remedies before bringing their claims in the trial court. Instead, because of the Board's special expertise in interpreting the Code, the trial court should abate the prospective transferees' tortious interference and declaratory judgment claims so the Board may exercise its primary jurisdiction to

---

1. Unless otherwise indicated, "the Code" refers to the Texas Motor Vehicle Commission Code, and "the Board" refers to the Motor Vehicle Board. *See* Tex.Rev.Civ. Stat. art. 4413(36).

determine the Code construction issue raised with those claims. We further conclude that the trial court did not abuse its discretion by entering a temporary injunction. Accordingly, we reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

Martin Graf is the sole shareholder of Graf Ford, Lincoln, Mercury, Inc., a dealership in Del Rio, Texas. The dealership's agreement with Ford provides that if Graf Ford proposes to transfer the dealership, Ford shall have a right of first refusal to purchase the dealership on the same terms and conditions that the proposed buyer agreed to, "regardless of whether the proposed buyer is qualified to be a dealer." A Ford representative testified that this provision's purpose, and the purpose of similar provisions in other standard Ford dealership agreements, is "to be able to put into business dealers who [Ford feels] are qualified whenever [Ford has] the opportunity."

In 1999, Hanan and Gil Butnaru contracted with Graf to buy the Graf dealership. They also contracted separately to buy the real property upon which the dealership was located. Graf and J.M. Barton owned the property and executed that contract. Graf told the Butnarus about Ford's right of first refusal. Additionally, both agreements were "expressly conditioned upon approval by Ford of Hanan Butnaru as a[sic] authorized sales and service dealer" and warranted that neither agreement conflicted with any prior agreement to which Graf or Barton were parties.

In September 1999, Graf told Ford that he intended to sell the dealership to the Butnarus. The Butnarus then filed a Prospective Dealer Application with Ford, seeking approval as an authorized dealer. A month later, Ford informed Graf that it intended to exercise its right of first refusal and offered to pay the Butnarus' reasonable expenses incurred in negotiating the purchase and sale agreements. On the same day, Ford assigned its right of first refusal to an existing Ford dealer. Ford and Graf agreed that Ford would indemnify Graf against damages arising from Ford's exercising its right of first refusal and that Graf would cooperate with Ford in defending any action challenging the right.

Anticipating their breaching the purchase and sale agreements, the Butnarus sued Graf, Graf Ford, and Barton for breach of those agreements. The Butnarus also sued Ford for tortiously interfering with the agreements. They alleged Ford tortiously interfered because Ford's right of first refusal violates a Code provision that prohibits a manufacturer from denying or preventing a dealership transfer to a qualified applicant. *See* TEX.REV. CIV. STAT. art. 4413(36), §§ 5.01B(c), 5.02(b)(8). Thus, the Butnarus sought a declaration that Ford's right of first refusal was unenforceable and a declaration about the parties' rights and obligations under the agreements. Finally, the Butnarus requested a temporary injunction to prevent Ford or its assignees from exercising its right of first refusal during the suit. Ford opposed this request and filed a plea to the jurisdiction. Ford argued that the Board has exclusive jurisdiction to determine whether a manufacturer has violated the Code's provisions. The trial court denied Ford's plea and granted the injunction.

Ford sought interlocutory review of the trial court's temporary injunction. *See* 18 S.W.3d at 762. The court of appeals first noted that the Legislature did not confer any rights on prospective transferees un-

der the Code to seek relief for the Code violation the Butnarus allege. Then, the court of appeals held that the trial court did not have jurisdiction over the Butnarus' claims, "to the extent their claims are based on violations of the [Code]," because the Code grants the Board exclusive jurisdiction over alleged Code violations. 18 S.W.3d at 767. The court also held that the Code does not violate the Texas Constitution's open courts provision, which prohibits the Legislature from unreasonably abrogating well-established common-law claims. The court explained that the Code merely confers new statutory rights on motor vehicle dealers and leaves "all others in the same position they previously occupied." 18 S.W.3d at 768. Therefore, the court concluded that "the Butnarus can sue Ford ... for tortious interference with contract, breach of contract, and declaratory relief. They simply cannot base those causes of action on [Code] violations...." 18 S.W.3d at 768. The court of appeals then remanded the claims not based on Code violations and, holding that the Butnarus did not establish an inadequate legal remedy, dissolved the trial court's temporary injunction. 18 S.W.3d at 769–70.

The Butnarus petitioned this Court to review the court of appeals' opinion. Typically, jurisdiction over an order granting or denying a temporary injunction is final in the courts of appeals. *See* Tex. Gov't Code § 22.225(b)(4). However, because the court of appeals' decision here conflicts with another court of appeals' decision, this Court has jurisdiction. *See* Tex. Gov't Code § 22.225(c). Specifically, the court of appeals' holding that the Code does not violate the Texas Constitution's open courts provision conflicts with *David McDavid Nissan, Inc. v. Subaru, Inc.,* 10 S.W.3d 56, 68 (Tex.App.-Dallas 1999), *affirmed in part, reversed in part, and remanded on rehearing,* 84 S.W.3d 212 (Tex. 2002). In *David McDavid Nissan,* the

court of appeals held that the Code abrogated the plaintiff's common-law claims without reasonably substituting another remedy and thus contravened the open courts provision. 10 S.W.3d at 67–68. We granted the Butnarus' petition, as well as the petition in *David McDavid Nissan,* to resolve this conflict.

At the time the trial courts and courts of appeals here and in *David McDavid Nissan* determined whether the Board had exclusive jurisdiction, section 3.01 of the Code provided:

(a) The board has the general and original power and jurisdiction to regulate all aspects of the distribution, sale, and leasing of motor vehicles and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of this power and jurisdiction, including the original jurisdiction to determine questions of its own jurisdiction. In addition to the other duties placed on the board by this Act, the board shall enforce and administer the terms of Chapter 503, Transportation Code.

(b) Unless otherwise specifically provided by Texas law not in conflict with the terms of this Act, all aspects of the distribution and sale of motor vehicles shall be governed exclusively by the provisions of this Act.

Tex.Rev.Civ. Stat. art. 4413(36), § 3.01 (Vernon Supp.1998), *amended by* Act of May 18, 2001, 77th Leg., R.S., ch. 155, § 5, 2001 Tex. Gen. Laws 313.

In our original opinions in this case and in *David McDavid Nissan,* we concluded that this provision granted the Board primary—not exclusive—jurisdiction over Code issues and claims. Moreover, we concluded that section 3.01(b) does not grant the Board exclusive jurisdiction be-

cause, by its plain language, that subsection only establishes that the Code governs this area of law and trumps other laws if they conflict with the Code.

. However, only weeks before we issued our opinions, the Legislature amended section 3.01(a) to provide:

> (a) The board has the *exclusive, original jurisdiction* to regulate *those aspects* of the distribution, sale, and leasing of motor vehicles *as governed by this Act* and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of this power and jurisdiction, including the original jurisdiction to determine questions of its own jurisdiction.

TEX.REV.CIV. STAT. art. 4413(36), § 3.01(a) (emphasis added). The Legislature made this amendment "effective immediately" after receiving the necessary votes, which occurred on May 18, 2001. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 155, § 5, 2001 Tex. Gen. Laws 313, 317. The Legislature's amendment did not change section 3.01(b).

Today, we determine (1) whether section 3.01's current or former version applies, (2) whether the applicable provision grants the Board exclusive jurisdiction and how this affects the trial court's jurisdiction here, and (3) whether the trial court abused its discretion by issuing a temporary injunction.

## II. APPLICABLE LAW

### A. DAVID McDAVID NISSAN, INC.

#### 1. Retroactive application of Section 3.01

Today, in *David McDavid Nissan,* we held that section 3.01's current version constitutionally retroactively applied to the pending claims a licensed motor vehicle dealer had raised against a manufacturer.

*David McDavid Nissan,* 84 S.W.3d at 218. We explained that this jurisdictional provision is procedural and remedial and did not affect a vested right. *David McDavid Nissan,* 84 S.W.3d at 219 (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244, 273, 114 S.Ct. 1483 (1994); *Baker Hughes, Inc. v. Keco, R & D, Inc.,* 12 S.W.3d 1, 4 (Tex. 1999); *City of Tyler v. Likes,* 962 S.W.2d 489, 502 (Tex.1997); *Ex parte Abell,* 613 S.W.2d 255, 260 (Tex.1981); *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898, 900 (1955); *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556, 560 (1916); *Blonstein v. Blonstein,* 831 S.W.2d 468, 472 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Southwestern Bell Tel. Co. v. City of Kountze,* 543 S.W.2d 871, 874–75 (Tex.Civ.App.-Beaumont 1976, no writ)).

#### 2. Exclusive Versus Primary Jurisdiction

Furthermore, in *David McDavid Nissan,* we explained the significant differences between the primary and exclusive jurisdiction doctrines. *David McDavid Nissan,* 84 S.W.3d at 218. We held that, unlike its former version, section 3.01(a)'s current version expressly confers exclusive jurisdiction on the Board to initially determine issues or claims that the Code governs. *David McDavid Nissan,* 84 S.W.3d at 218. We based our decision on the provision's plain language, and the Legislature's intent when it amended the provision to include the express exclusive jurisdiction language. *David McDavid Nissan,* 84 S.W.3d at 218. (citing *Cash Am. Int'l Inc. v. Bennett,* 35 S.W.3d 12, 15 (Tex.2000); *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 447 (Tex. 1996); SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 1665, 77th Leg., R.S. (2001)).

### 3. Open Courts Challenge

In *David McDavid Nissan*, we also concluded that, as applied to the motor vehicle dealer in that case, the Code did not violate the Texas Constitution's open courts provision. *David McDavid Nissan*, 84 S.W.3d at 227; *see also* TEX. CONST. art. 1, § 13. We explained that the Board's exclusive jurisdiction over issues and claims the Code governs—all matters derived from the Code and not the common law—did not abrogate any of the motor vehicle dealer's common-law rights. *David McDavid Nissan*, 84 S.W.3d at 227 (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 448 (Tex.1993)).

### B. TEMPORARY INJUNCTIONS

■ A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993); *Electronic Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex. Civ.App.-Dallas 1974, no writ). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling*, 863 S.W.2d at 57. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex.App.-Dallas 1989, no writ).

■ Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Walling*, 863 S.W.2d at 58; *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984). A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Walling*, 863 S.W.2d at 58; *Walker*, 679 S.W.2d at 485. The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 918 (Tex.1985); *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978).

### III. ANALYSIS

#### A. WHETHER AMENDED SECTION 3.01 RETROACTIVELY APPLIES

■ In *David McDavid Nissan*, we concluded that section 3.01(a), a jurisdictional provision, is a procedural and remedial statute that applied retroactively because it did not affect a vested right in that case. *See David McDavid Nissan*, 84 S.W.3d at 219 (citing *Landgraf*, 511 U.S. at 273, 114 S.Ct. 1483; *Likes*, 962 S.W.2d at 502; *Abell*, 613 S.W.2d at 260; *Phil H. Pierce Co. v. Watkins*, 114 Tex. 153, 263 S.W. 905, 907 (1924); *Middleton*, 185 S.W. at 560; *Blonstein*, 831 S.W.2d at 472; *City of Kountze*, 543 S.W.2d at 874–75). However, section 3.01(a) still may not constitutionally retroactively apply in this case if it affects a vested right. *See Baker Hughes*, 12 S.W.3d at 4; *Middleton*, 185 S.W. at 560.

The Butnarus do not allege that section 3.01(a) affects any vested right. Instead, they contend that the Legislature did not expressly make the amendment to section 3.01(a) retroactive, and therefore, we should apply the Code Construction Act to conclude section 3.01(a)'s current version does not retroactively apply. *See* TEX. GOV'T CODE §§ 311.022 ("A statute is pre-

sumed to be prospective in its operation unless expressly made retrospective."), 311.031 ("[T]he ... amendment ... of a statute does not affect ... the prior operation of the statute or any prior action taken under it.").

But the Butnarus misplace their reliance on the Code Construction Act. That statute applies only to "each code enacted by the 60th or subsequent legislature as part of the state's continuing statutory revision program." TEX. GOV'T CODE § 311.002. When the Legislature recodifies a statute under Texas's continuing statutory revision program, the statute will indicate this. *See, e.g.,* TEX. LOCAL GOV'T CODE § 1.001 ("This code is enacted as a part of the state's continuing statutory revision program...."). And, though we refer to the Motor Vehicle Code as "the Code," nothing in the Code's language or legislative history shows that it is part of our State's "continuing statutory revision program." TEX. GOV'T CODE § 311.002; *Robbins Chevrolet Co. v. Motor Vehicle Bd.,* 989 S.W.2d 865, 867 (Tex.App.-Austin 1999, pet. denied); *see also Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 385 (Tex. 1982).

Section 3.01(a) is a jurisdictional statute that, in this case, does not alter the parties' rights or obligations or remove any remedies already available. *See David McDavid Nissan,* 84 S.W.3d at 222; *Likes,* 962 S.W.2d at 502. This provision merely determines the tribunal that must initially resolve all issues and claims the Code governs. *See Landgraf,* 511 U.S. at 273, 114 S.Ct. 1483; *David McDavid Nissan,* 84 S.W.3d at 222; *City of Kountze,* 543 S.W.2d at 874–75. The parties do not have a vested right in choosing what tribunal will do this. *See Landgraf,* 511 U.S. at 273, 114 S.Ct. 1483; *David McDavid Nissan,* 84 S.W.3d at 222; 1898454; *Middleton,* 185 S.W. at 559; *City of Kountze,* 543

S.W.2d at 874–75. Accordingly, we conclude that amended section 3.01(a) constitutionally applies retroactively in this case.

**B. APPLYING SECTION 3.01'S CURRENT VERSION TO THE BUTNARUS' CLAIMS**

■ Ford contends that section 3.01's current version grants the Board exclusive jurisdiction, and thus, the Board has the sole authority to make the initial determination about the alleged Code violation here. The Butnarus, on the other hand, argue that section 3.01 does not oust the trial court's jurisdiction because the Board does not have authority to award damages for their well-established common-law claims. Therefore, the Butnarus assert that the Board only has *primary* jurisdiction to decide whether Ford's right of first refusal violates the Code.

The Butnarus' pleadings currently reflect four claims, the first two of which are based on Ford's allegedly violating the Code. First, the Butnarus seek a judicial declaration that Ford's right of first refusal violates the Code. Second, the Butnarus allege that Ford tortiously interfered with the purchase and sale agreements by attempting to exercise its allegedly invalid right of first refusal. Third, the Butnarus seek a declaration about the parties' rights and obligations under the purchase and sale agreements. Fourth, the Butnarus claim that Graf and Barton have breached or are about to breach the purchase and sale agreements by permitting Ford to exercise its right of first refusal rather than requiring Ford to determine the Butnarus' eligibility under the Code for the dealership transfer.

The court of appeals, after analyzing section 3.01's former version, concluded that the Board has exclusive jurisdiction;

however, it held that the Butnarus do not have standing as prospective car dealership transferees to seek relief from the Board for the Code violation they allege. The court of appeals further determined that the Butnarus' lack of standing to obtain relief from the Board did not give them a right to seek damages for the alleged Code violation in the trial court. 18 S.W.3d at 767–68. Accordingly, the court of appeals held that the Butnarus could maintain their breach of contract and tortious interference claims; however, the Butnarus could not "base those causes of action on [Code] violations." 18 S.W.3d at 768.

As discussed above, we disagree that section 3.01's former version granted the Board exclusive jurisdiction. But we conclude that section 3.01(a)'s current version, which applies here, grants the Board exclusive jurisdiction over issues and claims the Code governs. Thus, we must determine if the Butnarus' claims fall within the Board's exclusive jurisdiction.

Because motor vehicle distribution and sales affects our State's economy and citizens' welfare, the Code's primary purpose is "to insure a sound system of distributing and selling motor vehicles through licensing and regulating manufacturers ... and dealers of those vehicles." *See* Tex.Rev. Civ. Stat. art. 4413(36), § 1.02. To accomplish this, the Code strictly regulates conduct by or between franchise dealers and manufacturers. *See* Tex.Rev.Civ. Stat. art. 4413(36), §§ 4.01–.07, 5.01–.05. For example, the Code establishes how a dealer must request a transfer, assignment, or sale of its franchise agreement. Tex.Rev. Civ. Stat. art. 4413(36), § 5.01B. Under that process, the Code also determines the circumstances under which a manufacturer may withhold its consent to the dealer's request. *See* Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(c).

Specifically, to transfer a dealership the dealer must file a written application with the manufacturer to transfer the dealership. The application must identify the prospective transferee and any pertinent agreements about the proposed transfer. *See* Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(a)(1)-(4). The manufacturer must timely advise the dealer in writing if the prospective transferee is qualified or if the transferee is not acceptable. Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(b). The Code prohibits a manufacturer from "unreasonably" withholding its consent to a dealer's transfer application if the prospective transferee is "of good moral character" and otherwise meets the manufacturer's predetermined, written standards, if any, about a transferee's business experience and financial qualifications. Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(c). Further, the Code makes it unlawful for a manufacturer to "fail to give effect to or attempt to prevent any sale or transfer" of a dealership "except as provided by Section 5.01B." Tex.Rev.Civ. Stat. art. 4413(36), § 5.02(b)(8).

Additionally, the Code provides a dealer a remedy if the manufacturer "unreasonably" denies a dealer's application to transfer its franchise ownership. The Code's definition of "dealer" includes licensed dealers but not prospective transferees. *See* Tex.Rev.Civ. Stat. art. 4413(36), § 1.03(7). The dealer may file a protest with the Board. Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(d). The issue would be whether the prospective transferee is qualified, and the manufacturer must prove the prospective transferee's inadequacy. Tex. Rev.Civ. Stat. art. 4413(36), §§ 5.01B(d)- (e). If the Board determines the prospective transferee is qualified, the Board shall enter an order reflecting this, and the manufacturer must accept the transfer. Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(e).

Here, the court of appeals' analysis presumes that the Butnarus' trial court claims simply seek monetary damages based on their allegation that Ford's exercising its right of first refusal and denying the dealership transfer violated section 5.01B. But the Butnarus' trial court claims involve something different. The Butnarus seek relief for Ford's alleged tortious interference, and this claim, in turn, raises a Code construction issue. To establish their tortious interference claim, the Butnarus must show: (1) a contract exists between Graf, Graf Ford, Barton and the Butnarus; (2) Ford willfully and intentionally interfered with that contract; (3) the interference proximately caused the Butnarus damage; and (4) the Butnarus suffered actual damage or loss. *See Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996); *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995). But Ford may defeat liability by proving the affirmative defense that its conduct was privileged or justified—so long as that conduct was not illegal or tortious. *See Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex.2000); *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex.1997); *Texas Beef Cattle*, 921 S.W.2d at 210. It is the Butnarus' position that Ford does not have a justification defense, because rights of first refusal contravene certain Code provisions and, accordingly, are void and unenforceable. *See* Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(c) (prohibiting a manufacturer from unreasonably denying a dealership transfer); Tex.Rev.Civ. Stat. art. 4413(36), § 1.04 (making an agreement to waive the Code's terms void and unenforceable). The Butnarus also request that the trial court enter a declaratory judgment that rights of first refusal violate the Code.

We conclude that the Butnarus' tortious interference and declaratory judgment claims fall outside the purview of the Board's exclusive jurisdiction. In *David McDavid Nissan*, we held that the Board's exclusive jurisdiction under section 3.01(a) required the dealer in that case to exhaust its administrative remedies to obtain a final Board finding to support its Code-based DTPA, bad faith, and oral contract claims. *David McDavid Nissan*, 84 S.W.3d at 226. In concluding that the Board's exclusive jurisdiction applied to the dealer's Code-based DTPA and bad-faith claims, we explained that the Code provides a hybrid claims-resolution process by which a dealer or manufacturer may seek damages for certain Code violations. *David McDavid Nissan*, 84 S.W.3d at 226 (discussing Tex.Rev.Civ. Stat. art. 4413(36), §§ 6.06(a), (e)). Based on this process, we held that the dealer had to exhaust its administrative remedies under the Code to obtain supporting Board findings before a trial court could finally adjudicate the dealer's damages request for its Code-based claims. *See David McDavid Nissan*, 84 S.W.3d at 227. Additionally, in requiring the dealer to obtain a Board finding before pursuing its oral contract claims, we relied on a Code provision mandating that a dealer obtain the Board's approval and a license before operating a franchise in a certain area. *See David McDavid Nissan*, 84 S.W.3d at 227 (discussing Tex.Rev.Civ. Stat. art. 4413(36), §§ 4.02(c), 4.06(a)-(e)).

Here, however, no Code provision extends the Board's exclusive jurisdiction to resolving the Butnarus' tortious interference and declaratory judgment claims so that they must exhaust any administrative remedies before seeking judicial relief. In fact, the Code's failing to establish any procedure through which the Board may resolve a prospective transferee's claim that a manufacturer unlawfully refused to

accept a dealer's transfer request—coupled with the Board's inability to award monetary damages—demonstrate the contrary. Thus, this case is analogous to *Cash America*, in which we held that the plaintiff did not have to exhaust administrative remedies under the Pawnshop Act because "nothing in the statutory scheme indicate[d] that the Legislature intended to replace a pledgor's common-law remedies with the like-kind replacement remedy" available under the statute. *Cash Am.*, 35 S.W.3d at 18. Similarly, because the Code does not indicate the Legislature's intent to replace the prospective transferees' remedies here, the Butnarus do not have to exhaust any administrative remedies before suing Ford for tortious interference or declaratory relief.

 But our inquiry does not end here. Though the Legislature did not confer exclusive jurisdiction on the Board to resolve the Butnarus' claims, we still must decide whether the Board has primary jurisdiction to resolve the Code construction issue that those claims raise. *See, e.g, Cash Am.*, 35 S.W.3d at 18 (recognizing that, though an agency does not have exclusive jurisdiction, the policies underlying the primary jurisdiction doctrine may require the agency to initially decide an issue). In *David McDavid Nissan*, we explained that the primary jurisdiction doctrine requires trial courts to allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations. *David McDavid Nissan*, 84 S.W.3d at 221 (citing *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Cash Am.*,

35 S.W.3d at 18; *Foree v. Crown Cent. Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex.1968); *Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 413 (1961); *Kavanaugh v. Underwriters Life Ins. Co.*, 231 S.W.2d 753, 755 (Tex.Civ. App.-Waco 1950, writ ref'd); Travis, Comment, *Primary Jurisdiction: A General Theory and Its Application to the Securities Exchange Act*, 63 Cal. L.Rev. 926, 927 (1975)). We noted that, when the primary jurisdiction doctrine requires a trial court to defer to an agency to make an initial determination, the court should abate the lawsuit and suspend finally adjudicating the claim until the agency has an opportunity to act on the matter. *David McDavid Nissan*, 84 S.W.3d at 221 (citing *Central Power & Light Co. v. Public Util. Comm'n*, 17 S.W.3d 780, 787 (Tex.App.-Austin 2000, pet. denied); *Roberts Express, Inc. v. Expert Transp., Inc.*, 842 S.W.2d 766, 771 (Tex.App.-Dallas 1992, no writ)).

We conclude that the primary jurisdiction doctrine applies in this case. The Butnarus' tortious interference and declaratory judgment claims raise a Code construction issue that is within the Board's special competence and expertise. *See Cash Am.*, 35 S.W.3d at 18. As discussed above, the Legislature has specifically authorized the Board to resolve disputes between a manufacturer and dealer when the dealer alleges that the manufacturer violated section 5.01B by unreasonably withholding consent to transfer a dealership. *See* Tex.Rev.Civ. Stat. art. 4413(36), § 5.01B(d). The Board's expertise in construing section 5.01B in these disputes, and the State's interest in a uniform interpretation of the Code, requires the trial court to abate the lawsuit and suspend finally adjudicating the tortious interference and declaratory judgment claims until the Board has a reasonable opportunity to

act on the matter. *See David McDavid Nissan,* 84 S.W.3d at 228; *Central Power & Light,* 17 S.W.3d at 787; *Roberts Express,* 842 S.W.2d at 771. Accordingly, the trial court should abate the claims pending the Board having an opportunity to exercise its primary jurisdiction to determine, at least in the first instance, whether a right of first refusal violates the Code. In sum, we hold that section 3.01(a) confers exclusive jurisdiction on the Board but only over issues and claims the Code governs. Here, the Code does not govern the Butnarus'—as prospective transferees—tortious interference and declaratory judgment claims. Consequently, the Butnarus do not have to exhaust any administrative remedies before raising these claims in the trial court. However, because these claims raise a Code construction issue, the primary jurisdiction doctrine requires the trial court to abate the claims pending the Board having a reasonable opportunity to determine whether a right of first refusal violates the Code.

## C. Open Courts Challenge

 The Butnarus contend that if the Board has exclusive jurisdiction over all Code issues and claims, this violates our Constitution's open courts provision. Tex. Const. art. 1, § 13. This provision prohibits the Legislature from abrogating well-established, common-law claims unless the reason for doing so outweighs a litigant's constitutional right of redress. *See Texas Ass'n of Bus.,* 852 S.W.2d at 448.

 But we have already concluded that the Board's exclusive jurisdiction does not extend to the claims in this case. Accordingly, the Code does not abrogate any previously existing common-law rights here. The trial court has immediate jurisdiction to adjudicate the Butnaru's common-law claims for breach of the purchase and sale agreements. And, after deferring to the Board so it has an opportunity to decide the Code construction issue, the trial court may finally adjudicate the tortious interference and related declaratory judgment claim.

## D. Temporary Injunction

The trial court temporarily enjoined Ford or its assignees from exercising its right of first refusal during the suit. The court of appeals dissolved the temporary injunction, agreeing with Ford's contention that the Butnarus did not establish an inadequate legal remedy. 18 S.W.3d at 769. In so concluding, the court of appeals noted that generally a court will not enforce contracts by injunction because a suit for damages is deemed to be an adequate remedy. 18 S.W.3d at 769. The Butnarus respond twofold. First, they argue that they were not required to show an inadequate legal remedy because an alleged statutory violation relieves a movant of that burden. *See Furr v. Hall,* 553 S.W.2d 666, 672 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.). They assert that courts have a duty to enjoin statutory violations. *See Priest v. Texas Animal Health Comm'n,* 780 S.W.2d 874, 876 (Tex.App.-Dallas 1989, no writ). Second, the Butnarus argue that they have otherwise established the temporary-injunction elements. On the inadequate legal remedy element, they argue that Ford's exercising its right of first refusal would deprive them of the opportunity to purchase two unique assets: real property and the dealership located on the property. *See, e.g., Home Sav. of Am. v. Van Cleave Dev. Co.,* 737 S.W.2d 58, 59 (Tex.App.-San Antonio 1987, no writ) (noting that "each and every piece of real estate is unique" and that "is certainly an element to be considered in deciding whether there [will be] irreparable damages").

### 1. Statutory Violation

The Butnarus' misplace their reliance on *Furr*. See *Furr*, 553 S.W.2d at 672. *Furr* does not generally propose that an alleged statutory violation relieves the plaintiff's burden to show an inadequate legal remedy. Rather, the party seeking injunctive relief in *Furr* relied on a specific statute giving the right to an injunction, and the court of appeals concluded that the statutory right relieved the party from proving an inadequate legal remedy. *Furr*, 553 S.W.2d at 672. The court relied on *Republic Insurance Co. v. O'Donnell Motor Co.*, which explains:

> The general rule at equity is that before injunctive relief can be obtained, it must appear that there does not exist an adequate remedy at law. This limitation, however, has no application where the right to relief is predicated on a statutory ground other than on the general principles of equity.

289 S.W. 1064, 1066 (Tex.Civ.App.-Dallas 1926, no writ).

Here, the Butnarus rely on general equitable principles, not a statutory injunctive-relief right, to enjoin Ford's conduct. Thus, *Furr* does not apply. And the Butnarus had to establish in the trial court, in addition to the other temporary-injunction elements, an inadequate legal remedy.

### 2. Temporary Injunction Elements

In the trial court, the Butnarus alleged that Ford's exercising its right of first refusal would tortiously interfere with the Butnarus' contract to purchase the real property and the contract to purchase the dealership. They further contended that their right to purchase the real property and dealership would be lost if Ford exercised its right of first refusal, and, therefore, injunctive relief was necessary to preserve the status quo.

At the temporary injunction hearing, the Butnarus presented the following evidence: (1) their agreement with Graf and Barton to purchase the real property, (2) their agreement with Graf and Graf Ford to purchase the dealership, (3) Graf Ford's agreement with Ford containing the right of first refusal that allegedly violates the Code, (4) the Code provisions that allegedly prohibit Ford's right of first refusal provision, and (5) the Butnarus' dealership application to Ford detailing their business experience and financial qualifications. Additionally, Hanan Butnaru testified about his agreements with Graf, Graf Ford, and Barton to purchase dealership and the real property in Del Rio. He stated that in planning to establish a dealership, he was only looking within a 100 mile radius of San Antonio, which includes Del Rio. He also explained, and the agreements entered in evidence showed, that the Butnarus agreed to pay $1.2 million for the real property and only $500,000 for the dealership.

Based on the Butnarus' allegations and this evidence, the trial court granted the temporary injunction. The trial court stated in the order that the Butnarus would be irreparably harmed if Ford exercises its right of first refusal "in that the issues and rights sought to be adjudicated will become moot and [the Butnarus] will have lost the opportunity to purchase the Dealership and the Real Property."

The court of appeals, however, dissolved the temporary injunction after concluding that the Butnarus did not establish an inadequate legal remedy:

> The Butnarus are not interested in the real property for its own resources or aesthetics. Their interest in the property results solely from the fact that the dealership is located on it. Thus, their true complaint relates to their inability to purchase the dealership. The unique-

ness of the real property is therefore irrelevant to the adequacy of their legal remedy.

18 S.W.3d at 769. The court of appeals' holding is predicated upon its assumptions that the real property is neither unique nor pertinent to this dispute and that the Butnarus are only interested in purchasing the dealership.

 We agree with the court of appeals that, generally, a court will not enforce contractual rights by injunction, because a party can rarely establish an irreparable injury and an inadequate legal remedy when damages for breach of contract are available. *Canteen Corp.,* 773 S.W.2d at 401; *Chevron U.S.A., Inc. v. Stoker,* 666 S.W.2d 379, 382 (Tex.App.-Eastland 1984, writ dism'd). But under an abuse of discretion standard, the court of appeals cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Davis,* 571 S.W.2d at 861–62. Moreover, the court of appeals cannot substitute its judgment for the trial court's reasonable judgment even if it would have reached a contrary conclusion. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992); *Beaumont Bank,* 806 S.W.2d at 226. The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Davis,* 571 S.W.2d at 862.

 The evidence shows this is a case involving two contracts: a contract to purchase land and a contract to purchase a business. There is some evidence that the Butnarus desired valuable land located at this specific Del Rio location. Thus, the evidence before the trial court supports its conclusion that this dispute is about the right to purchase real property worth at least $1.2 million and not just the dealer-

ship itself. *See Home Sav.,* 737 S.W.2d at 59 (upholding temporary injunction in dispute involving land worth $1.5 million). And a trial court may grant equitable relief when a dispute involves real property. *See Bennett v. Copeland,* 149 Tex. 474, 235 S.W.2d 605, 609 (1951); *E.I. DuPont de Nemours & Co. v. Zale Corp.,* 462 S.W.2d 355, 359–60 (Tex.Civ.App.-Dallas 1970, writ ref'd n.r.e.); *Burnett v. Mitchell,* 158 S.W. 800, 801–02 (Tex.Civ.App.-Fort Worth 1913, writ ref'd). Thus, the trial court's conclusion that the Butnarus do not have an adequate legal remedy was not arbitrary and unreasonable and was not made without reference to guiding rules and principles. And, because the trial court's determination was not an abuse of discretion, the court of appeals should not have substituted its judgment for that of the trial court. *Beaumont Bank,* 806 S.W.2d at 226.

Ford contends that the court of appeals could have also determined that the Butnarus did not establish a probable right to recovery. We disagree. The trial court could reasonably conclude, based on the Butnarus' allegations and the evidence previously discussed, that the Butnarus had a probable right to recovery. *See Sun Oil,* 424 S.W.2d at 218 (stating that the temporary injunction applicant is not required to establish that it will prevail on final trial and need only plead a cause of action and show a probable right to the relief sought). Because this conclusion was not "so arbitrary as to exceed the bounds of reasonable discretion," *CRC–Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 262 (Tex.App.-Houston [1st Dist.] 1996, no writ), the trial court did not abuse its discretion in finding a probable right to recovery.

Accordingly, we conclude that there is evidence to support the trial court's decision to issue the temporary injunction. *See Davis,* 571 S.W.2d at 862. Thus, the

212

trial court did not abuse its discretion, and we reverse the court of appeals' order dissolving the temporary injunction.

IV. CONCLUSION

Section 3.01(a) grants the Board exclusive jurisdiction but only over the issues and claims the Code governs. Because the Code does not govern, or expressly authorize the Board to resolve, the Butnarus' tortious interference and declaratory judgment claims, these prospective transferees need not exhaust any administrative remedies before the trial court has jurisdiction over these claims. However, under the primary jurisdiction doctrine, the trial court should abate these claims to the extent that may be necessary to allow the Board a reasonable opportunity to resolve the Code construction issue they raise. Finally, the trial court did not abuse its discretion in granting the temporary injunction. Thus, we reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings consistent with this opinion on rehearing.