In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-09-00371-CV


____________________



CARROL THOMAS, BEAUMONT INDEPENDENT SCHOOL


DISTRICT AND WOODROW REECE, Appellants



V.



BEAUMONT HERITAGE SOCIETY AND EDDIE ESTILETTE, Appellees






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. D-184,425






 OPINION


 This is an accelerated interlocutory appeal from a temporary injunction order that
enjoins appellants (1) from demolishing South Park Middle School. See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(4) (Vernon 2008). 

 In ruling on a temporary injunction, the trial court does not make a final decision on
disputed facts; instead, the purpose of a temporary injunction "is to preserve the status quo
of the litigation's subject matter pending a trial on the merits." Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 204 (Tex. 2002). Therefore, in deciding whether to grant or deny an
application for a temporary injunction, trial courts are given discretion. Id. (citing Walling
v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993)). While temporary injunctions are not granted
as a matter of right, "[a] reviewing court should reverse an order granting injunctive relief
only if the trial court abused that discretion." Id. The reviewing court may not substitute its
judgment for that of the trial court unless the trial court's action was so arbitrary that it
exceeded the bounds of reasonable discretion. Id.

 On August 3, 2009, the trial court determined that harm was imminent because
contractors were preparing to tear down buildings at South Park Middle School. Pending a
trial on the merits, the trial court enjoined the school district, and its agents and employees,
from proceeding with their plans until the court could conduct a merits-based trial, scheduled
by the court for September 21, 2009. The language in the trial court's order, which is now
the subject of this interlocutory appeal, enjoins the appellants from "demolishing the South
Park Middle School Main Building and ancillary buildings at 4500 Highland Avenue,
Beaumont, Texas from the date of entry of this order." Nevertheless, the order is temporary
as the court promptly scheduled a trial on the merits.

 In our review of a temporary injunction order, we view the evidence in the light most
favorable to the trial court's order and indulge every reasonable inference in its favor. See
Tri-Star Petroleum Co. v. Tipperary Corp., 101 S.W.3d 583, 587 (Tex. App.-El Paso 2003,
pet. denied). Our review is confined to the validity of the order. Id. 

 In the trial court, neither party requested findings of fact and conclusions of law. 
Consequently, for purposes of this appeal, we presume all findings necessary to support the
trial court's judgment and affirm if there is any legal theory sufficiently raised by the
evidence to support it. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978). If some evidence
reasonably supports the trial court's decision, the trial court does not abuse its discretion. 
Butnaru, 84 S.W.3d at 211 (citing Davis, 571 S.W.2d at 862).

The Record


 In early 2007, the Board of Trustees for the Beaumont Independent School District
announced that the District would seek a $388.6 million bond issue. At a meeting held on
August 30, 2007, the Board approved an Order calling an election and specifying the
proposition, in pertinent part, as follows:

 Shall the Board of Trustees of the Beaumont Independent School
District be authorized to issue and sell bonds of the District in the aggregate
principal amount not to exceed $388,600,000 for the purpose of acquiring,
constructing, renovating, improving and equipping new and existing school
buildings and school facilities in the District and purchasing necessary sites for
school buildings and school facilities. . . . (2) (Emphasis added).


 In an election held in November 2007, the District's voters approved issuance and sale
of the bonds. Afterwards, the District began to further define many projects at various sites
that involved acquiring, constructing, renovating, improving, and equipping new and existing
schools. However, the record reflects evidence which, if true, shows that school officials,
or their agents, before the bond election, represented to the public that there would be no
demolition of "old South Park." The record further reflects a dispute over whether
statements by the District's agents were authorized, ratified, or approved by the District. 
When it became apparent that the District intended to demolish the school, the Beaumont
Heritage Society and Eddie Estilette filed a suit against the Beaumont Independent School
District, Dr. Carrol Thomas (the District's superintendent), Woodrow Reece (the president
of the District's Board of Trustees) and alleged, among other claims, that the District had no
legal right to demolish South Park Middle School.

 At the injunction hearing, Superintendent Thomas testified that based on the current
construction plans, none of the buildings at South Park Middle School would be retained. 
Thus, the record in the trial court raises material mixed issues of fact and law. For instance,
does "constructing," "renovating" or "improving," as used in the bond proposition, include
demolishing an entire facility?

Analysis


 By applying for a temporary injunction, the applicant requests the court to exercise
its equitable jurisdiction, "and in exercising that power the court balances competing
equities." NMTC Corp. v. Conarroe, 99 S.W.3d 865, 868 (Tex. App.-Beaumont 2003, no
pet.). Here, the contention was that the buildings in question would have been destroyed
within the time it took to reach a trial on the merits if the trial court refused to intervene-an
issue that the trial court, exercising its power of equity, could weigh against the construction
deadlines established by the District's program to use the funds authorized by the bond
election. See id. 

 As the merits of the underlying suit are not considered in appellate review, we do not
decide today, nor do we intend to imply, that the appellees will ultimately prevail on some
or any of their claims, nor may we assume "that the evidence taken at a preliminary hearing
on temporary injunction will be the same as the evidence developed at a trial on the merits."
Brooks v. Expo Chemical Co., Inc., 576 S.W.2d 369, 370 (Tex. 1979); see Davis, 571 S.W.2d
at 861-62. Nevertheless, because our review of the record reveals the trial court, in weighing
the equities, did not abuse its discretion in granting a temporary injunction to preserve the
status quo pending a trial on the merits of the appellees' claims, we must affirm the trial
court's order. 

 In light of the equities involved, language used in the bond proposition, and the
question over the District's authority to use the bond funds for demolition of an entire
school facility, we conclude the trial court had the necessary authority to temporarily
enjoin the District from using bond funds to pay for demolishing South Park Middle
School pending a trial on the merits.

 In addition, the District asserts the trial court's temporary injunction is overly broad
because it prohibits the school from using other funds to demolish the South Park Middle
School. A school district's trustees are vested with the duty to manage the school district's
property. Tex. Educ. Code Ann. § 11.151(c) (Vernon 2006). "The trustees may, in any
appropriate manner, dispose of property that is no longer necessary for the operation of
the school district." Id. When asked whether the board of trustees for the District had
voted to tear down South Park, Superintendent Thomas answered: "[T]he answer would
be no." 

 Texas law, however, restricts expenditures of public school funds except for
statutorily authorized purposes, which, with respect to demolition, may be spent "for other
purposes necessary in the conduct of the public schools determined by the board of
trustees." Tex. Educ. Code Ann. § 45.105(c) (Vernon 2006). The District's brief does
not provide us with a record reference showing that the minutes of Board meetings reflect
a vote to demolish the facility. See Tex. R. App. P. 38.1(i). As the appellant in the matter
now before us, the District has failed to show that the trial court abused its discretion. See
Butnaru, 84 S.W.3d at 204. Thus, in light of the superintendent's testimony, and in the
absence of any minutes that reflect that the Board authorized the demolition of South Park
Middle School, and in the absence of any authorities that demonstrate the Board's
authorization was unnecessary, we hold the trial court possessed authority to enjoin any
demolition of South Park Middle School pending a trial on the merits of the issues raised by
appellees. 

 Appellees and the appellants raise a number of other issues. However, we expressly
do not reach any of them as they are not necessary to the final disposition of this accelerated
appeal from the trial court's temporary injunction. See Tex. R. App. P. 47.1. For the reasons
stated, we affirm the trial court's temporary injunction order. 







 AFFIRMED. 




 ____________________________

 HOLLIS HORTON

 Justice

Submitted on September 15, 2009

Opinion Delivered September 18, 2009

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Appellants are Beaumont Independent School District, Dr. Carrol Thomas, the
District's superintendent, and Woodrow Reece, the president of the District's Board of
Trustees. The appellees are the Beaumont Heritage Society and Eddie Estilette, a petitioner
objecting to demolition of South Park Middle School. 
2. The entire proposition is as follows:


 Shall the Board of Trustees of the Beaumont Independent School
District be authorized to issue and sell bonds of the District in the aggregate
principal amount not to exceed $388,600,000 for the purpose of acquiring,
constructing, renovating, improving and equipping new and existing school
buildings and school facilities in the District and purchasing necessary sites for
school buildings and school facilities, which bonds may be issued in various
series or issues, may be sold at any price or prices, shall mature and bear
interest at such rate or rates (fixed, variable, floating, adjustable or otherwise)
as shall be determined by the Board of Trustees of the District within its
discretion at the time of issuance, but not to exceed the maximum maturity
dates and interest rates now or hereafter authorized by law; and shall the Board
of Trustees be authorized to levy and pledge and cause to be assessed and
collected annual ad valorem taxes on all taxable property in the District,
sufficient, without limit as to rate or amount, to pay the principal of and
interest on said bonds and the cost of credit agreements, if any, executed in
connection with the bonds, all as authorized by the Constitution and laws of
the State of Texas, including particular[ly] (but not by way of limitation)
Subchapter A of Chapter 45, Texas Education Code, and Chapter 1371, Texas
Government Code, together with all amendments and additions thereto, and of
the United States of America?