COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-07-153-CV

 

 

 

IN THE MATTER OF B.M.                                                                      

 

------------

 

FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

------------

 

MEMORANDUM
OPINION[1]

 

------------

I.  Introduction








Appellant B.M., a juvenile
with severe mental and psychological problems, appeals the trial court=s judgment revoking his probation and committing him to the Texas
Youth Commission (TYC).  In two grounds,[2]
B.M. contends that the trial court abused its discretion in committing him to
the TYC and that the evidence is legally insufficient to require him to
register as a sex offender.  We will
affirm.

II.  Factual and Procedural Background

In October 2005, a trial
court adjudicated B.M., who was then fifteen years old, delinquent for
indecency with a child, and placed him on two years= probation.  The trial court=s order required that B.M. participate in an outpatient sex offender
treatment program.  In April 2006, the
State filed a Motion to Modify Disposition, alleging that B.M. had violated the
terms of his probation and requesting that the trial court commit B.M. to the
TYC.  After a hearing, the trial court
found that B.M. had violated the terms of his probation as the State had
alleged.  But rather than revoking his
probation, the trial court ordered B.M. removed from his home and placed in the
Specialized Treatment of Offenders Program (STOP), which is a long-term
residential treatment program for juveniles who have committed sexual offenses.  

In January 2007, B.M. was
unsuccessfully discharged from STOP, and the State filed another Motion to
Modify Disposition based upon his unsatisfactory performance in the
program.  In April 2007, the trial court
conducted a hearing on the State=s motion, revoked B.M.=s probation, and committed him to the TYC for an undetermined amount
of time.  B.M. now appeals.








III.  Order of Commitment

In his first ground of error,
B.M. alleges that the Atrial court
abused its discretion by committing B.M. to the TYC because the decision to
place was [made] without reference to any guiding rules or principles.@  

After a trial court has
adjudicated a juvenile delinquent, the trial court has broad discretion to
determine disposition.  In re C.J.H.,
79 S.W.3d 698, 702 (Tex. App.CFort Worth 2002, no pet.).  An
appellate court therefore reviews the trial court=s judgment and commitment order modifying the juvenile=s disposition under an abuse of discretion standard.  Id.

To determine whether a trial
court abused its discretion, we must decide whether the trial court acted
without reference to any guiding rules or principles; in other words, we must
decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id.  An abuse of discretion does not occur as long
as some evidence of substantive and probative character exists to support the
trial court=s
decision.  Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 211 (Tex. 2002).








When a juvenile court
modifies a disposition by committing the juvenile to the TYC, it must determine
that it is in the child=s best
interests to be placed outside the child=s home; that reasonable efforts were made to prevent or eliminate the
need for the child=s removal from
the child=s home and
to make it possible for the child to return home; and that the child, in the
child=s home, cannot be provided the quality of care and level of support
and supervision that the child needs to meet the conditions of probation.  Tex.
Fam. Code Ann. ' 54.05(m)(1)
(Vernon Supp. 2007).








B.M. contends that the State
failed to prove all three requirements of section 54.05(m)(1).[3]  First, B.M. argues that the State failed to
present any evidence of how commitment to the TYC would serve B.M.=s best interest.  The State,
B.M. alleges, should have presented evidence as to the impact that a TYC
commitment would have on B.M. and the possible sex offender treatment programs
available at a TYC institution. 
Furthermore, B.M. contends that the record is devoid of what reasonable
efforts were made to prevent or eliminate the need for B.M.=s removal from his home. 
Finally, B.M. argues that the State failed to prove that B.M., in his
home, could not be provided the quality of care and level of support and
supervision that he needed to meet the conditions of probation.  B.M. argues that the evidence at the hearing
only served to demonstrate that a locked-down, structured, and intensive
program (such as STOP) was ineffective for B.M. and that no evidence suggested
that the TYC would be any more effective.[4]









At the April 2007 hearing on
the State=s motion,
the State presented the testimony of the STOP program coordinator, who said
that B.M. had struggled in the STOP programCreceiving 450 office referrals during the seven months he was in the
program for not complying with staff instructions, being disrespectful, and
refusing to complete both homework assignments for school and treatment
assignments for his sexual offenses.  The
STOP coordinator testified that B.M. refused to participate in the program and
instead asked to be sent to the TYC.  The
coordinator also noted that B.M. should not be sent back home with his mother
and stepfather because the victims of his previous sexual offenses lived at the
home, and, given B.M.=s lack of
progress in his treatment and his psychological evaluation, B.M. was likely to
re-offend.  At the same time, the
coordinator testified, there were no other alternative treatment programs for
B.M.  

Thus, testimony at the
hearing on the State=s motion
indicated that the State had initially tried probation without removing B.M.
from his house, and, when B.M. unsuccessfully completed that, had tried keeping
him on probation but placing him in a residential treatment center, at which
B.M. was similarly unsuccessful.  TYC
commitment was the only remaining option.

The State also presented the
testimony of a therapist with the STOP program who had psychologically
evaluated B.M. for the seven months B.M. was in STOP.  The therapist testified that B.M. posed a
very high risk to the community because B.M. had sexual fantasies about both
adults and children, which meant that he was more likely to commit another
sexual offense.  Apart from the danger to
the community, the therapist revealed that B.M.=s fantasies were about his own family, most of whom were living at his
home with his mother and stepfather.  The
therapist additionally testified that, based on psychological testing, B.M.
showed a high risk to sexually re-offend and that, because he had not shown any
progress in STOP, that it was not in the best interests of the public to
release him into the community. 








Lastly, B.M.=s stepfather testified that he and B.M.=s mother had tried to comply with all of the requests made of them
while B.M. was in STOP and had tried to motivate B.M. to participate in the
program.  The stepfather testified that
STOP had not properly accommodated B.M. because, as far as the school side of
the program was concerned, the STOP teachers taught B.M. on a grade level much
higher than the grade level at which B.M. functioned,[5]
B.M. had previously suffered burns on 42% of his body, suffered from epileptic
seizures, and was hearing impaired.  The
stepfather opined that, from what he had heard, the TYC would not be the best
placement option for B.M. but that B.M. would be better off in an outpatient
program that would teach at his level. 
Finally, even though the stepfather testified that B.M. would not return
to his previous home but would go instead to his biological father=s home (where either his father or a babysitter would supervise him),
the stepfather admitted that B.M. had previously committed a sexual offense at
the biological father=s residence.








Thus, the testimony
established that it was unwise for B.M. to return to the home of his mother and
stepfather because victims of his crimes lived at that residence and that it
was similarly unwise for him to return to the home of his biological father
because he had committed a sexual offense in that home as well.  Simply put, B.M.=s family could not provide a secure location in which B.M. could live,
outpatient treatment had failed, inpatient treatment had failed, and the State
had no other option but confinement in the TYC. 

The record additionally reflects
that B.M., who indicated that he wished he did not feel the urge to commit
sexual offenses, expressed a desire to be committed to the TYC.  Additionally, expert testimony established
that because of B.M.=s lack of
progress and performance on psychological examinations, he posed a high risk to
the community and to his family of re-offending.

Given this testimony, we
cannot say that the trial court=s findings that commitment was in B.M.=s best interests, that the State had made reasonable efforts to
prevent the commitment, and that B.M. could not, at any home available to him,
receive the level of care necessary to meet the conditions of his probation
were arbitrary or unreasonable or without reference to guiding principles.  See Tex.
Fam. Code Ann. '
54.05(m)(1); Butnaru, 84 S.W.3d at 211; In re J.B., No.
02-06-00396-CV, 2007 WL 2331023, at *3 (Tex. App.CFort Worth Aug. 16, 2007, no pet.) (mem. op.) (holding similar
evidence sufficient under section 54.05(m) to support commitment); In re
V.B., No. 02-06-00262-CV, 2007 WL 79518, at *3 (Tex. App.CFort Worth Jan. 11, 2007, no pet.) (mem. op.) (same).  Accordingly, we overrule B.M.=s first ground.








IV.  Sex Offender Registration

B.M.=s second ground of error is that the evidence was legally insufficient
to require him to publicly register as a sex offender. 

Pursuant to the relevant
provisions of the Texas Sex Offender Registration Program, a person who has a
reportable conviction or adjudication must register as a sex offender with the
local law enforcement authority in any municipality where the person resides or
intends to reside for more than seven days. 
Tex. Code Crim. Proc. Ann.
art. 62.051(a) (Vernon 2006).  A Areportable conviction or adjudication@ includes an adjudication of delinquent conduct based on a violation
of section 21.11 of the penal code, which is indecency with a child.  Id. 62.001(5)(A); see Tex. Penal Code Ann. ' 21.11 (Vernon 2003).








As an exception to this
general rule, a trial court can defer its decision on whether to require a
juvenile to register if the trial court determines that forcing the juvenile to
register would not increase the protection of the public and that the harm that
registration would cause to the juvenile and the juvenile=s family clearly outweighs any potential increase in the protection of
the public.  Tex. Code Crim. Proc. Ann. art. 62.352(a).  If the trial court defers its decision on
requiring registration, it nevertheless retains discretion and jurisdiction to
require registration at any time during the treatment or on the unsuccessful
completion of treatment.  Id. art.
62.352(c).  The standard of review on
appeal is whether the juvenile court committed procedural error or abused its
discretion in requiring registration.  Id.
art. 62.357(b).  B.M. challenged the
basis for the decision.  We therefore
treat B.M.=s ground as
a complaint that the trial court abused its discretion by ordering him to
register as a sex offender.  See id.

In this case, the trial
court, in November 2005, originally adjudicated B.M. delinquent for violating
section 21.11 of the penal code, which is committing indecency with a
child.  See Tex. Penal Code Ann. ' 21.11.  While this would
normally require registration as a sex offender, the trial court was able to
defer its decision on registration because B.M. was a juvenile and explicitly
did so in an AOrder
Deferring Sex Offender Registration.@ See id. arts. 62.05(a), 62.001(5)(A), 62.352(a).  In its order, the trial court correctly
recited the code of criminal procedure and stated that it retained the
discretion to require him to register as sex offender Aat any time during the treatment or on the . . . unsuccessful
completion of treatment.@  See Tex.
Code Crim. Proc. Ann. art. 62.352(c). 









At the hearing in April 2007,
the trial court heard evidence that B.M. had unsuccessfully completed STOP and
that his psychological evaluations indicated a high likelihood that he would
re-offend.  It was only after this
testimony about how B.M. violated the terms of his probation by unsuccessfully
completing both outpatient and inpatient programs, did not show any interest in
successfully completing any sex offender treatment program, and was likely to
continue committing sexual offenses that the trial court finally made him
register as a sex offender.  Therefore
the trial court did not arbitrarily act without reference to any guiding rules
or principles but instead acted within its discretion.  See Tex.
Code Crim. Proc. Ann. art. 62.357(b); Downer, 701 S.W.2d at 241C42; In re J.D.G., 141 S.W.3d 319, 322 (Tex. App.CCorpus Christi 2004, no pet.) (holding that the trial court did not
abuse its discretion by making a juvenile register as a sex offender when the
trial court heard evidence that the juvenile had unsuccessfully completed a sex
offender treatment program and should be considered potentially dangerous).
Accordingly, we overrule B.M.=s second ground.

V.  Conclusion

Having overruled both of B.M.=s grounds, we affirm the trial court=s judgment.

 

PER CURIAM

 

 

PANEL F:    WALKER, LIVINGSTON, and DAUPHINOT, JJ.

 

DELIVERED: January 31, 2008











[1]See Tex. R. App. P. 47.4.





[2]Appellant
uses the term Agrounds@ to
describe the issues he presents on appeal, we therefore will similarly refer to
his issues presented as grounds of error.





[3]B.M.
appears to argue in part of his brief that the trial court also erred by
ordering him into STOP in April 2006. 
But the only issue properly before this court is whether the trial court
erred by committing B.M. to the TYC in its April 2007 order of commitment.  See Tex.
R. App. P. 25.1(b).





[4]The
trial court=s
judgment stated, AThe
Court finds it is in the child=s best interests to be placed
outside the child=s
home.  The Court also finds that
reasonable efforts were made to prevent or eliminate the need for the child=s
removal from the child=s
home and to make it possible for the child to return home and the child, in the
child=s
home cannot be provided the quality of care and level of support and
supervision that the child needs to meet the condition of probation.@  Because of this language, we do not focus on
whether the trial court violated section 54.04(m)(1), which merely requires the
inclusion of such language in the judgment; we only look to whether there was
any basis in the record for this finding. 
See Tex. Fam. Code Ann.
'
54.05(m)(1).





[5]This
testimony was countered by the testimony of the STOP coordinator, who said that
STOP had made accommodations so that B.M. was taught on the grade level at
which he functioned and that B.M. was able to comprehend his school work
assignments.