In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00018-CV


______________________________




WENDELL WATSON, Appellant



V.



TELECHECK SERVICES, INC. AND


TRS RECOVERY SERVICES, INC., Appellees



 


On Appeal from the 123rd Judicial District Court


Panola County, Texas


Trial Court No. 2007-433




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 We withdraw our opinion dated May 29, 2008, and substitute this opinion therefor.

 The trial court denied Wendell Watson's request for a temporary injunction, which Watson
sought against Telecheck Services, Inc. and TRS Recovery Services, Inc. Watson now brings this
interlocutory appeal challenging the trial court's ruling. Section 51.014(a)(4) of the Texas Civil
Practice and Remedies Code permits an interlocutory appeal of a district court's grant or denial of
a temporary injunction. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon Supp. 2007).

 Watson, proceeding pro se, filed suit against Telecheck and TRS claiming violations of
various statutes offering consumers protection. Watson's suit complained that Telecheck and TRS
had wrongly placed Watson on their list of "hot check" writers, which had led to Watson's checks
being declined at various businesses. This, Watson claimed, violated his rights under the Texas
Constitution; (1) the Federal Fair Credit Reporting Act; (2) and the Texas Deceptive Trade Practices Act. (3) 
Ancillary to the lawsuit, Watson asked the trial court for a temporary injunction, which would have
ordered Telecheck and TRS to remove Watson's name from this "hot check" list. 

 Watson's appeal lists fifteen points of error, which can be distilled to the following: (1) the
trial court abused its discretion in denying the request for temporary injunction; (2) the trial court
interfered with testimony at the temporary injunction hearing; and (3) the trial court failed to rule on
a motion for rehearing. We will affirm the judgment.

I. Denial of Temporary Injunction 

 The decision to grant or deny a temporary injunction is within the trial court's sound
discretion, and that decision will only be disturbed for an abuse of that discretion. Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993);
State v. Walker, 679 S.W.2d 484, 485 (Tex. 1984). A reviewing court should reverse an order
granting injunctive relief only if the trial court abused that discretion. Walling, 863 S.W.2d at 58;
Walker, 679 S.W.2d at 485. The reviewing court must not substitute its judgment for the trial court's
judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable
discretion. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex. 1985); Davis v. Huey,
571 S.W.2d 859, 861-62 (Tex. 1978). We view the evidence in the light most favorable to the trial
court's order, indulging every reasonable inference in its favor, and determine whether the order was
so arbitrary that it exceeds the bounds of reasonable discretion. IAC, Ltd. v. Bell Helicopter Textron,
Inc., 160 S.W.3d 191, 196 (Tex. App.--Fort Worth 2005, no pet.). A trial court does not abuse its
discretion as long as there is some evidence to support the trial court's decision. Id. A trial court
does not abuse its discretion by denying a temporary injunction if the movant failed to prove one of
the requirements for a temporary injunction. Kent-Anderson Concrete, L.P. v. Nailling, No. 02-07-00008-CV, 2007 Tex. App. LEXIS 5966, at *5-6 (Tex. App.--Fort Worth July 26, 2007, no pet.)
(mem. op.) (citing Matrix Network, Inc. v. Ginn, 211 S.W.3d 944, 947 (Tex. App.--Dallas 2007, no
pet.)).

 The prayer of Watson's request for a temporary injunction asked the trial court to direct
Telecheck and TRS

 to immediately cease and desist in impeding Plaintiff's substantial and fundamental
constitutional rights, by removing all of Plaintiff's identifying information on their
negative database which causes the decline of his checks at Defendants' subscribing
merchants; and to notify all credit reporting agencies to remove the alleged debt from
Plaintiff's credit reports, and to return Plaintiff to the status which existed
immediately prior to their original report listing the alleged debt, and that no bond be
required of Plaintiff. 


 A temporary injunction is an extraordinary remedy and does not issue as a matter of right.
Butnaru, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove
three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief
sought; and (3) a probable, imminent, and irreparable injury in the interim. Id. An injury is
irreparable if the injured party cannot be adequately compensated in damages or if the damages
cannot be measured by any certain pecuniary standard. Id. (citing Canteen Corp. v. Rep. of Tex.
Props., Inc., 773 S.W.2d 398, 401 (Tex. App.--Dallas 1989, no writ)).

 Watson contends that his irreparable injury occurred because he suffered anguish, distress,
ridicule, and defamation and felt like an outcast from society when he was unable to cash his checks
at various locations. Further, he testified that he suffered mental anguish and reputation damages. 
He alleges these damages will continue into the future. 

 An applicant for injunctive relief must show that, if the injunction is not issued, the harm that
will occur is irreparable. Butnaru, 84 S.W.3d at 204. An injury is irreparable if the injured party
cannot be adequately compensated in damages or if the damages cannot be measured by any
pecuniary standard. Id. An injunction will not issue when there is a plain and adequate remedy at
law. McGlothlin v. Kliebert, 672 S.W.2d 231, 232 (Tex. 1984). Here, Watson has presently pending
a suit against Telecheck and TRS asking for damages for all of the matters he now alleges are
irreparable injuries. Damages for these injuries are available at trial and may be determined by the
trier of fact. Upon final hearing of this matter, if Watson prevails on his allegations, he will be
entitled to reasonable compensation for the compensable damages he has suffered. It necessarily
follows that, if such damages are available, Watson has an adequate remedy at law and equitable
relief by injunction is not warranted. 

 Further, it was established that Watson's name had been removed from the "hot check" list
before the injunction hearing. Watson conceded that he had been able to present checks to
businesses and have them honored; his inability to do so had been one of his main reasons for filing
for the injunction against Telecheck and TRS. 

II. Interference with Presentation of Evidence

 Watson alleges that he was prevented from introducing evidence supporting his right to the
temporary injunction by the trial court's interference. Since Watson was proceeding pro se, he was
allowed to testify in narrative form explaining the circumstances that led to the present dispute. (4) 
Several times during this soliloquy, the trial court suggested that Watson needed to discuss the
damages and the reason he believed he was entitled to an injunction, and what constituted irreparable
harm. In response to hearsay objections from opposing counsel, the trial court stated, "I'm trying to
give Mr. Watson some leeway." Later, the trial court observed that Watson had begun arguing rather
than testifying. The trial court admitted several of Watson's exhibits in spite of hearsay objections.

 The trial court has great discretion over the conduct of a trial. See Schroeder v. Brandon, 172
S.W.2d 488, 491 (Tex. 1943). It may properly intervene to maintain control in the courtroom, to
expedite the trial, and to prevent what it considers a waste of time. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001); see Tex. R. Evid. 611(a) (court shall exercise reasonable control over
mode and order of interrogating witnesses and presenting evidence so as to (1) make interrogation
and presentation effective for ascertainment of truth, (2) avoid needless consumption of time, and
(3) protect witnesses from harassment or undue embarrassment. 

 Overall, it appears the trial court made every effort to allow Watson to present his evidence. 
The record does not show that the trial court prevented Watson from testifying; if anything, the
record reveals the trial court was attempting to direct Watson to present evidence that was relevant
to the issue before the court. After reviewing the record in this case, we find the trial court acted
within the bounds of its discretion and authority in presiding at this trial. No error is shown. 

III. Failure to Set or Hear the Motion for Rehearing

 Watson further alleges that the trial court erred in failing to conduct a hearing and specifically
rule on his "Motion for Rehearing on Petition for Temporary Injunction." In the prayer, Watson
requested the previous order denying the temporary injunction be vacated and the temporary
injunction be issued. We will interpret this motion as a motion for new trial and to vacate the
previous judgment. No further order was entered by the trial court. 

 After a judgment is entered, a party may file a motion for new trial within thirty days after
the judgment is signed. Tex. R. Civ. P. 329b(a). If such motion is not determined by written order
signed within seventy-five days after the judgment was signed, it is considered to be overruled by
operation of law. Tex. R. Civ. P. 329b(c). The trial court was not required to conduct a hearing on
Watson's motion; it was overruled by operation of law. No error is presented. 

 We affirm the judgment of the trial court. 



 Jack Carter

 Justice


Date Submitted: April 24, 2008

Date Decided: August 20, 2008


1. Citing to Tex. Const. art. I, § 19.
2. 15 U.S.C. §§ 1692, et seq.
3. Tex. Bus. & Com. Code Ann. §§ 17.41, et seq.
4. According to Watson, he was at Harrah's Casino in Shreveport, Louisiana, in July 2003 and
cashed checks for $3,000.00 and $1,000.00. He then began explaining the "system" he was playing
when the court advised that was not relevant to the present hearing. He then testified about a dispute
with the dealer at which time he retrieved his money and was escorted off the premises. As a result,
he stopped payment on one of the checks and he was placed on Telecheck's and TRS's negative
databases. He started experiencing his checks being declined by various merchants.