Opinion Issued June 25, 2009









Opinion Issued June 25,
2009

 

 

 

 

 

 

 

 

 

 

 

 

 










 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00024-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



MALLORY YORK, BENNETTA REYNOLDS, HAMILTON DANIELS and
ALNA HOLDINGS, L.L.C., D/B/A FOLICURE, Appellants

 

V.

 

HAIR CLUB FOR MEN, L.L.C., D/B/A HAIR CLUB FOR MEN AND
WOMEN, Appellee

 

 



On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2008-69578








 



MEMORANDUM OPINION

           Mallory York, Benetta
Reynolds, Hamilton Daniels, and Alna Holdings appeal the trial court’s
temporary injunction of December 19, 2008.  Appellants contend that the trial
court abused its discretion (1) in finding that the agreements between Hair
Club for Men (Hair Club) and York and Reynolds contain consideration sufficient
to support the covenants not to solicit Hair Club’s customers; (2) in finding
that the roster of Hair Club customers constitutes confidential information;
and (3) in failing to balance the equities and find that more harm would be
suffered by appellants if the temporary injunction was granted than by Hair
Club if it were not granted.  After reviewing the record, we affirm the trial
court’s order granting temporary injunction.

Background

Hair Club is a
hair-replacement company that employs about one thousand people and operates
ninety locations throughout the United States, Puerto Rico, and Canada.  Each year, Hair Club sells about two hundred million dollars’ worth of hair
replacement products.  Hair Club has operated a Houston location for over
twenty-five years.  Alna Holdings, doing business as Folicure, competes with
Hair Club.    In 2008, Alna opened a Folicure location approximately one mile
from Hair Club’s Houston location.  

Hair Club serves clients
by replacing their hair using hair “systems” that stylists apply to clients’
skin with glue in weekly or monthly appointments.  Hair Club’s CEO, Darryl
Porter, testified that, due to the sensitive nature of hair loss, Hair Club
goes to great lengths to protect client information.  Hair Club keeps clients’
files in a locked file cabinet, and stylists receive limited personal
information about their clients in separate files that describe the clients’
hair system specifications.  Hair Club password-protects computerized files of
client information, and only certain people within the office, not stylists,
may access them.  Stylists are also not allowed to have cellular phones or
personal computers at work.  Porter testified that Hair Club invests a
significant amount of money in recruiting clients to use its hair systems; he
estimated that Hair Club spends approximately two thousand dollars for each new
client and spent over one million dollars for marketing and advertising in Houston in 2008.  Once a client joins Hair Club, he pays a yearly membership and a fee for
services.  The membership automatically renews unless the client notifies Hair
Club of termination thirty days before the renewal date. 

York and Reynolds both
worked as stylists at Hair Club’s Houston office.  Upon beginning employment
with Hair Club, York and Reynolds each signed an agreement entitled
“Confidentiality, Non-Solicitation, and Non-Compete Agreement.”  In the
agreements, York and Reynolds promised that in the event of termination of
employment with Hair Club (1) they would not, for a period of two years, engage
in the hair replacement business within ten miles[1]
of a Hair Club location; (2) they would not, for a period of two years, solicit
any business relating to hair replacement from any Hair Club customer and would
not provide hair replacement services to any Hair Club customers; and (3) they
would not use or disclose Hair Club’s customer lists, price lists, lists of
employees, and requirements for present and prospective customers, acquired
during the course of their employment.  At the end of September 2008, York quit his employment with Hair Club.  Reynolds quit on October 1.  York claimed that he
was moving to Dallas, and Reynolds told her supervisor that she was going to
work for a general purpose salon.  The managing director of the Houston Hair
Club location, Derrick Tomlin, testified that when York and Reynolds left Hair
Club, he met with each of them separately, reminding them of their obligations
under the non-compete, non-solicitation, and non-disclosure agreements that
they had signed at the beginning of their employment.[2] 
Shortly thereafter, Hair Club also mailed letters to York and Reynolds
restating their obligations under the agreement.  York and Reynolds both
testified in their depositions that they did not recall receiving these letters. 
Nevertheless, both York and Reynolds acknowledged that they had signed the
employment agreements and were able to paraphrase the meaning of the agreements
during their depositions.  

In October 2008, both
York and Reynolds went to work for Folicure in Houston.  After York and
Reynolds left Hair Club, Hair Club began losing clients.  York and Reynolds
admitted that they had contacted their clients from Hair Club and others had
contacted them.  York and Reynolds told their clients that they were now at
Folicure, and invited them to tour the facility.  York testified that Hamilton
Daniels, Folicure’s salon manager, encouraged him to contact his former Hair
Club clients.  

Daniels testified in his
deposition that Folicure engaged a private investigator to generate a client
list by observing Hair Club’s clients entering and exiting the building and
running their license plates to obtain their identities.  Daniels also
testified that Folicure provided Hair Club customers with a form letter to send
to Hair Club to terminate their memberships.  A private investigator testified
that Daniels offered to pay him thirty thousand dollars to obtain Hair Club’s
client list.  

Hair Club sued York,
Reynolds, Daniels, and Folicure for common law claims of misappropriation of
trade secrets, tortious interference with contract, and conspiracy, and York and Reynolds in particular for breach of the non-competition, non-solicitation, and
non-disclosure agreements.  Hair Club moved for a temporary injunction to
prevent the Folicure defendants from soliciting Hair Club customers, and from
using, disclosing, transferring, or communicating Hair Club’s confidential and
trade secret customer information.  The trial court conducted an evidentiary
hearing, and it granted a temporary injunction.  In the temporary injunction
order, the trial court found that Hair Club had developed confidential and
proprietary information, including client identities and information, at
substantial cost and effort, and that it had taken substantial measures to
protect the information, which York and Reynolds would not have known but for
Hair Club’s efforts.  Second, it further found that York and Reynolds
acknowledged in the non-competition, non-solicitation, and non-disclosure
agreements that they would receive confidential information by virtue of their
employment with Hair Club and had agreed not to disclose the information or
solicit Hair Club’s clients for a period of two years after the termination of
their employment with Hair Club.  Third, it found that, since going to work for
Folicure, York and Reynolds have used the confidential information they
received by virtue of their employment with Hair Club to solicit Hair Club’s
customers for Folicure, constituting a breach of their agreements with Hair
Club.  Fourth, it found that Daniels and Folicure should have known that York
and Reynolds were bound by the agreement, and they encouraged York and Reynolds
to use and disclose confidential information.  Finally, the trial court found
that Hair Club’s primary assets are its relationship with its clients and
goodwill, and that York and Reynolds, as licensed cosmetologists, could find
work in cosmetology outside of hair replacement.

The trial court thus
concluded that Hair Club pleaded and proved viable causes of action against
York, Reynolds, Daniels, and Folicure; a probable right to relief under the
non-solicitation and non-disclosure, but not the non-compete, provisions of the
agreement; and a probable, imminent and irreparable injury in the interim for which
Hair Club has no adequate remedy at law.  The trial court further concluded
that the non-disclosure agreements were valid and enforceable, and that
adequate consideration supported the non-solicitation agreements, but that the
agreements should be reformed to limit non-solicitation to customers who
received treatment at Hair Club Houston between October 1, 2006, and October 1,
2008.  Finally, the trial court concluded that the harm which Hair Club was
suffering outweighed the harm that the appellants would suffer from an
injunction because no adequate remedy at law exists for disclosure of a trade
secret in this context.  The trial court therefore enjoined Reynolds and York
from soliciting any of their clients from Hair Club, providing hair replacement
services to any of their clients from Hair Club, disclosing or communicating
any confidential, proprietary or trade secret information they obtained
directly or indirectly through their employment with Hair Club, including
clients’, customers’, and employees’ names, addresses and phone numbers, and
viewing any of Hair Club’s information provided by someone else.  It further
enjoined Folicure and Daniels from soliciting any customers Reynolds and York
serviced at Hair Club between October 1, 2006 and October 1, 2008, from using
any of Hair Club’s confidential information obtained by York and Reynolds or
accepting any other confidential information, and from contacting current and
former Hair Club employees.  The injunction is to remain in effect until a final
trial on the merits and a ruling on Hair Club’s application for permanent
injunction.

Discussion

The purpose of a
temporary injunction is to preserve the status quo pending trial, but it is an
extraordinary remedy and does not issue as a matter of right.  Butnaru v.
Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  Trial courts have broad
discretion in deciding whether to grant or deny a temporary injunction, and an
appellate court should reverse only if it finds a clear abuse of that
discretion.  Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd., 80
S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  We should not
reverse a trial court’s temporary injunction unless it is “so arbitrary as to
exceed the bounds of reasonable discretion.”  Id.  We review the
evidence in a light most favorable to the trial court's order, but an erroneous
application of the law to undisputed facts constitutes an abuse of discretion. 
 Id.

To obtain a temporary
injunction, an applicant must prove (1) a cause of action against a defendant,
(2) a probable right to the relief sought, and (3) a probable, imminent, and
irreparable injury in the interim.  Butnaru, 84 S.W.3d at 204.  An
injury is irreparable if there is no adequate remedy at law; if for example, a
prevailing applicant could not be compensated adequately in damages, or if
damages cannot be measured by any certain pecuniary standard.  Id.  The absence of any one of these elements renders an award of temporary
injunctive relief inappropriate.  See id.

          York, Reynolds, Hamilton,
and Folicure contend that the trial court erred in enforcing the
non-solicitation agreements because the trial court declined to enforce the
non-compete agreements because they were unenforceable for lack of
consideration.  They further contend that the trial court erred in finding that
Hair Club’s customer roster is a trade secret.  We construe these contentions
as challenges to part (2) of the required proof for a temporary injunction: 
that Hair Club had a probable right to the relief sought.  In the event we
reject these arguments, the Folicure defendants also contend that the trial
court erred in failing to balance the equities to find that the hardship on
York, Reynolds, Daniels and Folicure from the temporary injunction outweighs any
harm to Hair Club.  

Hair Club’s Probable Right to Relief

          A.  Enforceability of the
Non-Solicitation Agreements

          The Folicure defendants
contend that, since the trial court found that the non-compete agreements were
unenforceable for lack of consideration, it was likewise compelled to find the
non-solicitation covenants unenforceable because those require similar
consideration.  In fact, although the trial court struck through paragraphs in
the proposed order relating to the non-compete provision, it made no
affirmative finding that any non-compete agreement was unenforceable, and we
will not imply such a finding on the merits so as to nullify the findings it
did make—that the Folicure defendants conspired to violate the non-solicitation
and non-disclosure provisions of the agreements.  Instead, we address whether
Hair Club proved a probable right to relief based on the non-solicitation
agreements.

          Non-solicitation
agreements, like non-compete agreements, are governed by Section 15.50 of the
Texas Business and Commerce Code.  That section provides that an agreement is
enforceable 

[I]f it is ancillary to or part of an otherwise
enforceable agreement at the time the agreement is made to the extent that it
contains limitations as to time, geographical area, and scope of activity to be
restrained that are reasonable and do not impose a greater restraint than is
necessary to protect the goodwill or other business interest of the promisee.  

 

Tex. Bus.
& Com. Code Ann.
§ 15.50(a) (Vernon 2002).  The Texas Supreme Court recently addressed the
enforceability of non-compete agreements in Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, No. 07-0490, 2009 WL 1028051 (Tex. April 17,
2009).  There, the Court concluded that a non-compete agreement is enforceable
if the nature of the contemplated employment will reasonably require the
employer to furnish the employee with confidential information because, in such
an instance, an employer impliedly promises to provide confidential
information.  Id. at *3.  As is the case here, Mann Frankfort required
its employees to sign an agreement, upon beginning employment, promising not to
disclose any confidential information the employee obtained during his
employment.  Id. at *1.  Mann Frankfort’s employees had access to its client
database, containing clients’ names, billing information, and tax and financial
information, which constitute confidential information, and thus Mann Frankfort
provided sufficient consideration to support a non-disclosure agreement.  Id. at *6 (citing DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 684 (Tex. 1990)).  Similarly, here Hair Club provided client names and limited client
information to York and Reynolds, as it was necessary for their work as
stylists.  The testimony of Hair Club’s CEO, Darryll Porter, established that
Hair Club invested significant amounts of money in generating clients, thus
supporting the trial court’s finding that Hair Club had an interest in keeping
its client information confidential.  York and Reynolds could not have acted on
their promises not to disclose confidential information unless Hair Club
actually provided them with it, sufficient to find that an implied promise
existed.  See id.

Under Section 15.50(a),
the non-compete agreement must be “ancillary to or part of” an otherwise
enforceable agreement, meaning that (1) the consideration given by the employer
in the otherwise enforceable agreement must give rise to the employer’s
interest in restraining the employee from competing, and (2) the covenant must
be designed to enforce the employee’s consideration or return promise in the
otherwise enforceable agreement.  Id. at *7 (quoting Tex. Bus. & Com. Code Ann. §
15.50(a)).  Under Mann Frankfort, an employer’s implied promise of
access to confidential information satisfies the first requirement because the
promise and provision of confidential information generates the employer’s
interest in preventing the later disclosure of such information.  Id.  The employee’s promise not to disclose confidential information satisfies the
second requirement.  Id.  York’s and Reynolds’s agreements present
similar promises.  We hold that the non-solicitation and non-disclosure
agreements here are enforceable, and thus Hair Club has a probable right to
relief under them.  The trial court therefore did not abuse its discretion in
granting a temporary injunction on this ground.

          B.  Protection of
Customer Names

The Folicure defendants
also contend that the trial court abused its discretion in finding that York’s
and Reynolds’s customer lists are confidential information or trade secrets. 
They claim that York and Reynolds had no knowledge that the names of the
clients were confidential because the agreements specified customer lists
rather than specific names, thus Hair Club failed to protect its
clients’ names.  York and Reynolds claim to have never had access to formal
customer lists.  This is a semantic dispute: the customer lists would have
necessarily contained the customers’ names.  But the trial court plainly found
that Hair Club sought to protect its customers’ identities.  

Even if York and Reynolds
disclosed only the lists of customers that they serviced, divulging them to
their new employer violates the non-solicitation, if not the non-disclosure,
agreement.  The non-solicitation agreement requires the employee not to solicit
or aid in soliciting any business relating to hair replacement from any Hair
Club customer for two years after the termination of employment.  Reynolds and
York both admitted to inviting their clients from Hair Club to visit the
Folicure facility.  Their action violates the non-solicitation agreement, even
if the names were not protected under the non-disclosure provision.  Thus, the
trial court did not abuse its discretion in granting the injunction on the non-solicitation
or non-disclosure agreements.

Balancing the Equities

The Folicure defendants
claim that the trial court abused its discretion in failing to balance the
equities and find that the harm they faced due to the injunction far outweighed
the probable injury to Hair Club, which has an adequate remedy at law.  On the
contrary, the trial court’s findings of fact and conclusions of law
specifically indicate that it did balance the equities.  The trial court
expressly found that Hair Club’s primary assets are its relationship with its
clients and goodwill, and that York and Reynolds, as licensed cosmetologists,
could find work in cosmetology outside of hair replacement.  

As Hair Club customers
frequently have an ongoing relationship with Hair Club, measured by year-long
memberships, it could be difficult to estimate the actual damages from
customers lost to Folicure.  Furthermore, the Folicure defendants showed a
willingness to poach customers from Hair Club before the trial court enjoined
them from soliciting Hair Club customers.  Of Folicure’s fifty customers at the
time of the injunction, forty-one were former Hair Club customers. 
Furthermore, the trial court specifically did not enjoin York and Reynolds from
practicing hair replacement procedures.  The injunction only prevents them from
providing hair replacement to former Hair Club clients.  While former Hair Club
clients were the bulk of York’s and Reynolds’s customers at Folicure, the trial
court did not prevent them from finding new customers and continuing their
employment.  Folicure can continue to operate during the course of the
injunction, and Daniels may continue to manage the salon. Folicure may continue
to seek new clients.  We hold that the trial court did not abuse its discretion
in balancing the equities and finding in favor of the injunction.

Conclusion

We conclude that the
trial court did not abuse its discretion in granting a temporary injunction
against York, Reynolds, Daniels and Folicure to prohibit solicitation of Hair
Club’s clients.  We therefore affirm the order of the trial court.

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Keyes,
Hanks, and Bland.

 









[1] York’s agreement stated a twenty-mile geographic
limitation, but the trial court reformed the geographic limitation to ten
miles, as in Reynolds’s agreement.





[2] Tomlin also testified that he had meetings with Hair
Club employees during the course of employment reminding them of the importance
of confidentiality.