

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00156-CV

**MMM 410 BAR AND GRILL, LLC**,
Appellant

v.

Jose **FONG**, Ericka Fong, Loop 410 Development, Ltd. Co., and EFJFM, LLC,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI01524
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:      Karen Angelini, Justice
              Marialyn Barnard, Justice
              Patricia O. Alvarez, Justice

Delivered and Filed:  October 17, 2018

AFFIRMED

MMM 410 Bar and Grill, LLC appeals the trial court's order denying its application for temporary injunction.  MMM presents two issues on appeal asserting the trial court abused its discretion in denying the temporary injunction because: (1) MMM showed a probable right of recovery based on the landlord's failure to strictly comply with the default notice requirements of the lease agreement; and (2) MMM also established an irreparable injury for which there is no

adequate remedy at law. Because MMM had actual knowledge of the landlord's default notice, we hold MMM failed to establish a probable right to relief and affirm the trial court's order.[1]

## BACKGROUND

In August of 2017, MMM and appellees Jose Fong, Loop 410 Development, Ltd. Co., and EFJFM, LLC were parties to a Release and Settlement Agreement. The settlement agreement reaffirmed a stock purchase agreement pursuant to which Chris Morin and Michael Scheiler, who appear from the record to be the owners of MMM, acquired one hundred percent of the shares of VP Times, Inc. from EFJFM, LLC. At the temporary injunction hearing, however, testimony was presented that MMM was the current owner of all of the shares of VP Times. The settlement agreement also reaffirmed a lease agreement between VP Times and Loop 410 Development, which was owned by Jose Fong. The lease agreement was executed on behalf of Loop 410 Development by appellee Ericka Fong in her capacity as manager.

Under the terms of the settlement agreement, Scheiler, Morin and MMM agreed to pay Jose Fong $120,000. In addition, under the terms of the lease agreement, VP Times was obligated to pay Loop 410 Development monthly rental payments. VP Times was also obligated to procure and maintain insurance, "insuring both Landlord and Tenant, against all claims, damages or actions arising out of or in connection with Tenant's use or occupancy of the Premises." The lease agreement provided VP Times's failure to pay the rental payments when due was an event of default. In addition, VP Times's failure "to perform or observe any other of the non-monetary terms, provisions, conditions and covenants of [the] Lease for more than thirty (30) days after written notice of such failure" was another event of default. Finally, the lease agreement provided

---

[1] Because we affirm the trial court's order on the basis that MMM failed to establish a probable right to relief, we do not address MMM's second issue relating to irreparable injury. *See* TEX. R. APP. P. 47.1.

that upon the occurrence of any event of default, Loop 410 Development had the right to pursue various remedies, including changing the locks of the premises.

On November 3, 2017, Loop 410 Development sent written notice to the attorney representing MMM and VP Times.[2] The letter informed the attorney that VP Times was in default under the terms of the lease. One of the default grounds was failure to procure and provide evidence of insurance coverage. The notice stated Loop 410 Development would lock MMM and VP Times out of the premises if the defaults were not cured by November 16, 2017. Ultimately, Loop 410 Development locked MMM and VP Times out of the premises on December 7, 2017. The evidence is undisputed that MMM and VP Times never procured insurance coverage for the premises and that MMM and VP Times had actual knowledge of the default notice sent to their attorney.

On January 26, 2018, MMM sued the appellees and obtained a temporary restraining order preventing the appellees from foreclosing on the personal property located on the premises and the stock of VP Times. The order also prevented the appellees from selling the leased premises.

On February 9, 2018, the trial court held a hearing on MMM's application for temporary injunction. At the hearing, the nature of the relief MMM was seeking was discussed at length, including the nature of the status quo (MMM being locked out of the premises) and the court's lack of jurisdiction to address possession of the premises.[3] During the hearing, the issue being considered by the trial court was narrowed to whether Loop 410 Development sent proper default notice. At the conclusion of the hearing, the trial court took the matter under advisement and ordered the parties to file briefs on the default notice issue. After considering the briefs, the trial court signed an order denying MMM's application for temporary injunction. MMM appeals.

---

[2] The letter referred to MMM and VP Times as "your clients."
[3] The attorneys for the parties and the trial court agreed that possession would need to be addressed by a JP court.

**STANDARD OF REVIEW AND TEMPORARY INJUNCTION BURDEN**

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id*.; *see also Argo Group US, Inc. v. Levinson*, 468 S.W.3d 698, 700-01 (Tex. App.—San Antonio 2015, no pet.) "Whether to grant or deny a temporary injunction is within the trial court's sound discretion," and the trial court's ruling is reviewed under an abuse of discretion standard. *Butnaru*, 84 S.W.3d at 204; *see also Argo Group US, Inc.*, 468 S.W.3d at 700.

**DISCUSSION**

In its brief, MMM argues the notice provided by Loop 410 Development was insufficient because the notice was not in strict compliance with the notice provision in the lease agreement. Based on the insufficiency of the notice, MMM contends it "has a high probability of success on the merits of establishing that [appellees] wrongfully locked out [MMM]" and the "wrongful lockout" also establishes a high probability of success on the merits of MMM's tortious interference and wrongful foreclosure claims. The appellees respond the Texas Supreme Court has held that actual notice is sufficient notwithstanding the fact that Loop 410 Development sent the default notice to MMM's attorney rather than to the address set forth in the notice provision of the lease agreement.

The notice provision in the lease agreement provides in pertinent part as follows:

> **Notices**. All notices required to be given hereunder shall be in writing, and shall be served upon the party to be notified or upon its agent to the appropriate address shown below:
>
> ***

**Tenant**: VP Times, Inc.
7823 Moss Brook Dr.
San Antonio, Texas 78255
Facsimile: (___) ___-____
Email: alpick67@hotmail.com

The Texas Supreme Court has discussed the effect that receipt of actual notice has when a contract contains a notice provision. In *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 673 (Tex. 1987), Norman and Carol Reddell "financed their home through Jasper Federal Savings & Loan under a deed of trust agreement." In June of 1983, Jasper began foreclosure proceedings under the deed of trust. *Id.* The deed of trust contained an acceleration clause setting forth the notice Jasper was required to provide the Reddells prior to foreclosure. *Id.* In pertinent part, the deed of trust required that the notice inform the Reddells of their right to reinstate after acceleration. *Id.* It was undisputed that the notice Jasper sent did not inform the Reddells of their right to reinstate after acceleration. *Id.* After the Reddells' home was sold at foreclosure, the Reddells sued Jasper for wrongful foreclosure. *Id.* at 674.

After a bench trial, the trial court ruled in favor of Jasper concluding the Reddells had actual knowledge of their right to reinstate after acceleration. *Id.* The court of appeals reversed holding strict compliance with the terms of the deed of trust was required, and actual knowledge could not be substituted for notice. *Id.* The Texas Supreme Court reversed the judgment of the court of appeals and affirmed the judgment of the trial court holding actual notice of the right to reinstate after acceleration was sufficient. *Id.* at 675; *see also Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (holding actual notice of substitution of trustee under deed of trust barred action for wrongful foreclosure despite provision in deed of trust requiring notice); *Am. Props. of Hous., LLC v. Detering Office Partners, Ltd.*, No. 14-10-00063-CV, 2011 WL 529711, at *3 (Tex. App.—Houston [14th Dist.] Feb. 15, 2011, no pet.) (mem. op.) (holding actual notice of landlord's intent to repair the leased premises rendered the written notice

requirement in the lease unnecessary); *Choe v. Bank of Am., N.A.*, 605 Fed. Appx. 316, 321 (5th Cir. 2015) (holding actual notice of foreclosure sufficient where deed of trust required foreclosure notice to be sent to Gretchen H. Choe but notice was addressed to Gretchen H. Cole).

The United States Bankruptcy Court for the Southern District of Texas cited the Texas Supreme Court's decision in *Jasper Fed. Sav. & Loan Ass'n* as authority for holding actual notice was sufficient in a case more factually similar to the instant case. In *In re Greenshaw Energy, Inc.*, No. 03-30422, 2007 WL 1953491, at *1 (Bankr. S.D. Tex. July 3, 2007), the bankruptcy court entered an agreed order requiring the bankruptcy debtor, Greenshaw Energy, Inc. ("Debtor"), to pay Morris R. Greenshaw Oil & Gas, Inc. ("Greenshaw Oil & Gas) specific sums of money by specific dates. The order further stated any notice required to be given under the order "should be addressed to Debtor at Post Office Box 580337, Houston, Texas 77258." *Id.* Finally, the order provided that if the Debtor failed to timely make the payments described in the order, the automatic stay would be lifted on the day after the missed payment was due without further order of the court. *Id.*

After the Debtor failed to make one of the payments, Greenshaw Oil & Gas began foreclosure proceedings. *Id.* The foreclosure notice was sent to the Debtor at 12700 N. Featherwood, Houston, Texas 77034. *Id.* After the foreclosure sale, the bankruptcy trustee filed an adversary proceeding in the bankruptcy court asserting a wrongful foreclosure claim. *Id.* at *2. One of the irregularities asserted by the trustee was the notice being sent to the Featherwood address which the trustee maintained was a location vacated by the Debtor almost a year before the foreclosure notice was sent. *Id.* at *5, 7. Citing the Texas Supreme Court's decision in *Jasper Fed. Sav. & Loan Ass'n*, the court held the Debtor's actual notice of the foreclosure proceeding was sufficient. *Id.* at *8.

We believe the same analysis applies in the instant case. It is undisputed that MMM and VP Times had actual knowledge of the default notice Loop 410 Development sent to their attorney, and we hold this actual knowledge of the default notice was sufficient to permit Loop 410 Development to exercise its remedies under the lease by changing the locks to the leased premises.[4] Accordingly, the trial court did not err in concluding MMM did not have a probable right to relief on its claims or in denying MMM's application for temporary injunction.[5]

## CONCLUSION

The order of the trial court is affirmed.

Marialyn Barnard, Justice

---

[4] Noting that the lease agreement contained a provision giving VP Times an option to purchase the leased premises, MMM relies on cases holding the acceptance or exercise of an option in an option contract must strictly comply with the terms of the contract. *E.g. Stanford v. Evans*, No. 14-08-00776-CV, 2010 WL 2517675, at *4 (Tex. App.—Houston [14th Dist.] June 24, 2010, no pet.); *Besteman v. Pitcock*, 272 S.W.3d 777, 784 (Tex. App.—Texarkana 2008, no pet.). In this case, we are not addressing the notice required in exercising an option under an option contract. In addition, the initial term of the lease was for twelve months with VP Times having an option to renew for a maximum of seven additional one year terms "[p]rovided that Tenant has not defaulted in respect to any provision of the Lease." The option to purchase only commenced on year four of the lease provided that the parties had executed a renewal option that was in effect at the time the purchase option was exercised. It is undisputed that the default occurred in the initial term of the lease. Accordingly, we conclude the instant case is not governed by the law relating to the exercise of options under option contracts.

[5] We also note the final sentence in the notice provision of the lease agreement states, "Copies of notices are for informational purposes only, and a failure to give or receive copies of any notice shall not be deemed a failure to give notice." Because we have held MMM's actual knowledge of the default notice was sufficient to permit Loop 410 Development to exercise its remedies under the lease by changing the locks to the leased premises, we need not decide what effect this final sentence of the notice provision would have on MMM's argument regarding the default notice not being sent to the address set forth in the notice provision.