**Affirmed and Memorandum Opinion filed November 3, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00682-CV

---

**5826 INTERESTS, LTD. AND THE REAL PROPERTY KNOWN AS 6213 RICHMOND AVENUE, HOUSTON, HARRIS COUNTY, TEXAS,** Appellants

**V.**

**CITY OF HOUSTON, Appellee**

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2021-66733**

---

## MEMORANDUM OPINION

This is an accelerated, interlocutory appeal from the granting of a temporary injunction against appellants 5826 Interests, Ltd. and the Real Property Known as 6213 Richmond Avenue, Houston, Harris County, Texas (collectively 5826 Interests).[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4). Concluding

---

[1] The trial court also granted the temporary injunction against TBJNO Investments, LLC, the operator of an after-hours sexually oriented business in the building located on 6213

that the trial court did not abuse its discretion when it granted the temporary injunction, we affirm the trial court's amended order granting temporary injunction.

## BACKGROUND

TBJNO Investments operates an after-hours sexually oriented business in the building located on the property commonly identified as 6213 Richmond Avenue in Houston. 5826 Interests owns this property. The club has operated under various names, including "Showgirls," and "Bella's," but it was operating as "Bunny's Gentleman's Club" during the times relevant to this appeal. The club was located in a high-crime area and Bunny's has a general reputation as a "crime haven." Bunny's did not have a sexually oriented business permit and it could not receive one if it applied because it was located too close to two schools and a church.

The City of Houston received a large number of complaints regarding criminal activity in and around Bunny's. The complaints included drug offenses, criminal mischief, graffiti, theft, assaults, robberies, frequent gunfire, and a drive-by shooting during which the club manager at the time was shot in the leg.

The City of Houston began an investigation of Bunny's. Officer Domegas of the Houston Police Department investigated Bunny's on October 8, 2020. Domegas immediately observed a large sign outside the club that said "Bunny's Gentleman's Club" with a silhouette of a woman dancing on a stripper pole. The investigators discovered that Bunny's did not have a certificate of occupancy. The investigation also revealed serious fire code violations inside the club and Bunny's was ordered to shut down immediately.

---

Richmond Avenue in Houston. This entity has not appealed the temporary injunction order.

Investigators went to the club again on July 27, 2021. Bunny's did not have an alcohol license, but undercover police officers were able to purchase alcohol while visiting the club; they also saw club employees serving alcohol, and club patrons consuming alcohol inside the club. In addition, Bunny's did not have a sexually oriented business license but investigators discovered female entertainers with exposed breasts and buttocks dancing on stage in a provocative manner including "pole tricks" and performing "lap dances" which entailed the entertainer "straddling the lap of a patron and basically grinding in a sexual manner." Undercover officers also discovered underage female entertainers in the club.[2] The police arrested one female entertainer that night for failure to conspicuously display her personal entertainer license.[3]

The police went back to Bunny's on September 10, 2021. The undercover police officer discovered the same type of activities that he had seen during the July investigation. These included the purchase and consumption of alcohol and the same type of entertainment. The undercover officer also propositioned an entertainer for sex and they quickly agreed on a price for the act. The officer explained that the entertainer was not reluctant, and it was an easy transaction to arrange. The entertainer was arrested and charged with prostitution. The investigators also found eight underage entertainers that night. The club manager was arrested for harmful employment of a minor.

Investigators also contacted a representative of the owner of the property, Daniel Greenberg. Greenberg told the police they would need a "grand jury

---

[2] The law changed in the summer of 2021 to require all workers inside a sexually oriented business to be at least 21 years of age. The police discovered several entertainers were 20 years old on July 27, 2021.

[3] If a business is operating as a sexually oriented business, the business must obtain a sexually oriented business license and all entertainers need to obtain and wear an identification badge.

subpoena" if the police wanted a copy of the lease agreement. The police obtained the subpoena and served it on Greenberg during a meeting at Greenberg's office on October 20, 2020. Greenberg turned over several documents to the police, including a copy of the lease agreement. Greenberg told the police that he was willing to work with the police to do his part to reduce crime at the club location and surrounding area. Despite that assurance, as detailed above, Bunny's continued to operate as an unlicensed sexually oriented business after the October 20, 2020 meeting. The police were able to determine who was the "only owner of TBJNO Investments LLC" and they scheduled a meeting with him on November 10, 2020. The police served 38 citations on the owner, Thomas Jones.

After the investigations, the City filed suit against TBJNO Investments LLC and 5826 Interests seeking a declaration that no one may obtain a permit to operate a sexually oriented business at 6213 Richmond because the property does not meet the distance requirements from schools and churches. The City also sought temporary and permanent injunctions enjoining the defendants from operating any business at the 6213 Richmond address. After conducting a one-day evidentiary hearing, the trial court signed a temporary injunction against the defendants, which it later modified in an amended temporary injunction order. Among other findings, the trial court found that TBJNO Investments, 5826 Interests, and "the real property known as 6213 Richmond Avenue, Houston, Harris County, Texas, maintain a common nuisance pursuant to Chapter 125 of the Texas Civil Practice and Remedies Code." 5826 Interests then timely filed this interlocutory appeal.

## ANALYSIS

5826 Interests challenges the temporary injunction in four issues. We need only address its first and fourth issues because 5826 Interests admits in its opening brief that the trial court's amended temporary injunction order rectified the alleged

4

problems raised in its second and third issues.

## I.    Standard of review and applicable law

The purpose of a temporary injunction is to preserve the status quo regarding the subject matter of the litigation pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g). Litigants are not entitled to temporary injunctive relief as a matter of right. *Abbott v. Anti-Defamation League Austin, Sw. and Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (per curiam) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam)). To obtain a temporary injunction, an applicant is not required to establish that it will prevail in a final trial on the merits, but must plead and prove that it (1) has a cause of action against the opposing party; (2) has a probable right to the relief sought; and (3) faces probable imminent, and irreparable injury in the interim. *Id.* However, when the applicant has shown a violation of a statute that authorizes injunctive relief, it need not prove imminent, irreparable injury. *8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 861 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Butnaru*, 84 S.W.3d at 210). The decision to grant or deny such relief is committed to the trial court's discretion, and we will uphold its ruling absent a clear abuse of discretion. *Walling*, 863 S.W.2d at 58. We do not substitute our judgment for that of the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor. *Id.* An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence. *Id.*; *see Abbott*, 610 S.W.3d at 916 ("In resolving evidentiary matters, a trial court does not abuse its discretion 'if some evidence reasonably supports the court's

ruling.'"). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Abbott*, 610 S.W.3d at 916. Therefore, a court abuses its discretion if there is a clear failure to analyze or apply the law correctly. *Id.*

## II. The trial court did not abuse its discretion when it included 5826 Interests in the temporary injunction.

The Civil Practice and Remedies Code provides that "a person who maintains a place to which persons habitually go for [specified illegal purposes] and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance." *See* Tex. Civ. Prac. & Rem. Code Ann. § 125.0015. The statute then lists 28 different illegal activities including discharge of a firearm in a public place, prostitution, employing persons younger than 21 years of age for work in a sexually oriented business, and criminal mischief. 5826 Interests argues in its first issue that there is no evidence that it knowingly tolerated any of the illegal activities specified in the common nuisance statute. Viewing the record evidence in favor of the trial court's order as we must, we disagree.

The Civil Practice and Remedies Code authorizes a suit to enjoin a common nuisance against "any person who maintains, owns, uses, or is a party to the use of a place for purposes constituting a nuisance under this subchapter and may bring an action in rem against the place itself." *See id.* at § 125.002(b). In addition, section 125.004(a) provides that proof that any of the illegal activities listed in section 125.0015 are frequently committed at the place involved in the litigation, or that the place involved in the litigation is frequently used for any of the illegal activities found in section 125.0015, "is prima facie evidence that the defendant knowingly tolerated the activity." *See id.* at § 125.004(a). 5826 Interests argues in

6

its first issue that this presumption should apply only to the occupier of the premises, not to an owner.

We need not decide whether the presumption found in section 125.004(a) applies to owners, because even if it does not, there is evidence in the record that 5826 Interests, the undisputed owner of the property known as 6213 Richmond Avenue, knowingly tolerated the common nuisance activities. This evidence establishes that 5826 Interests was made aware of the unlawful activity at 6213 Richmond Avenue no later than October 20, 2020 when Houston Police officers met with Greenberg, the owner's representative. The evidence also establishes that the illegal activities continued for months after that notification occurred as demonstrated through the testimony of Officer Domegas and the undercover police officers who investigated Bunny's. We conclude that the evidence supports the trial court's decision to include 5826 Interests in its injunction order because it knowingly tolerated a common nuisance on a property it owned. *See Allied Home Mortg. Capital Corp. v. Fowler*, No. 14-10-00992-CV, 2011 WL 2367086, at *5 (Tex. App.—Houston [14th Dist.] June 9, 2011, no pet.) (mem. op.) (stating that a trial court has broad discretion to determine whether the applicant met its burden to establish all requirements for a temporary injunction); *Sharma*, 231 S.W.3d at 426 (stating that appellate courts defer to the trial court's assessments concerning the weight and credibility of the evidence offered in a temporary injunction hearing). We overrule 5826 Interests' first issue on appeal.

III. **The trial court did not abuse its discretion when it ordered that any violation of the Amended Temporary Injunction Order would result in full closure of all defendants' business on the 6213 Richmond property.**

5826 Interests argues in its fourth issue on appeal that the trial court abused its discretion when it ordered that any violation of the Amended Temporary Injunction Order would result in the closure of the defendants' business on the

5213 Richmond property. In essence, 5826 Interests argues that this section of the Amended Temporary Injunction Order is overbroad because it potentially restrains 5826 Interests' legal activities based on the unilateral actions of TBJNO Investments, LLC.

The common nuisance statute authorizes a trial court to impose reasonable requirements on the enjoined parties to prevent the use of the premises as a nuisance pending a final trial on the merits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 125.045. In the present case the trial court heard evidence that 5826 Interests knew about the illegal activities of TBJNO Investments, LLC for months and did nothing to stop them. Based on this evidence, the trial court exercised its discretion to impose, in the event the temporary injunction order was violated, a shutdown order on all defendants. This remedy is statutorily authorized. *See id.* (listing potential remedies in the event a temporary injunction order is violated, including "any other legal remedy available under the laws of the state.").

We have addressed and rejected a similar argument before. In *Sharma*, we stated that

> [w]hile ordinarily a temporary injunction should operate as a corrective rather than a punitive measure, when a choice must be made between a failure to provide adequate protection of a recognized legal right and the punitive operation of the writ, the latter course must be taken. It is well settled that injunctive relief must, of necessity, be full and complete so that those who have acted wrongfully and have breached their fiduciary relationship, as well as those who willfully and knowingly have aided them in doing so, will be effectively denied the benefits and profits flowing from their wrongdoing.

*Id.* at 429 (internal citations and quotation marks omitted). We conclude the trial court did not abuse its discretion when it included the challenged remedy in the

Amended Temporary Injunction Order.[4]  We overrule 5826 Interests' fourth issue.

## CONCLUSION

Having overruled all of 5826 Interests' issues necessary to resolve this appeal, we affirm the trial court's Amended Temporary Injunction Order.


/s/     Jerry Zimmerer
           Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.

---

[4] We once again note that "the most expeditious way to obviate the hardship and discomfiture of an unfavorable temporary injunction order is to try the case on the merits and secure a hearing wherein the case may be fully developed and the courts, both trial and appellate, may render judgments finally disposing of controversies." *Sharma*, 231 S.W.3d at 429, n.16 (citing *Sw. Weather Research, Inc. v. Jones*, 160 Tex. 104, 111, 327 S.W.2d 417, 422 (1959)).