

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-23-00144-CV; 04-23-00635-CV

In the **MATTER OF** the **MARRIAGE OF** Matthew **DUKE AND** Christie Lynn **TERRELL**
and in the Interest of P.O.T., a Child

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-02375
Honorable Christine Vasquez-Hortick, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Liza A. Rodriguez, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: March 27, 2024

ORDER ON ABILITY TO AFFORD COSTS AFFIRMED

This is a review of the trial court's order concluding that appellant Christie Lynn Terrell can afford payment of court costs. *See* TEX. R. CIV. P. 145(g). We affirm the trial court's order.

## BACKGROUND

The underlying divorce and tort action was filed on February 3, 2020. On April 5, 2021, Terrell filed a "Statement of Inability to Afford Payment of Court Costs." On November 29, 2022, the trial court signed a final decree of divorce and judgment on torts. Timely motions for reconsideration and new trial were filed. Thereafter, on February 27, 2023, Terrell filed a timely notice of appeal and requested the preparation of the reporter's record. On April 10, 2023, court reporters Deborah Doolittle and Erminia Uviedo filed a motion to require Terrell to prove her inability to afford court costs including the court reporter fees. *See* TEX. R. CIV. P. 145(e).

As required by rule 145, the trial court held an evidentiary hearing on the court reporters' motion. Terrell, who had the burden of proof at the hearing, testified on her own behalf. Terrell also called her ex-husband, Matthew Duke, to testify. Finally, Terrell presented various documents, including an updated "Statement of Inability to Afford Payment of Court Costs," which were admitted into evidence.[1] The trial court took judicial notice of the contents of its file and property records from the appraisal district.

Subsequently, the trial court signed an order concluding that Terrell has the ability to afford the costs incurred in this appeal. The trial court's order contains detailed findings regarding Terrell's ability to afford court costs and states that it may be challenged by filing a motion in the court of appeals within ten days after the date the order was signed. Terrell timely sought review of the trial court's order, albeit by filing a notice of appeal.[2] We construed Terrell's notice of appeal as a rule 145(g) motion for review of the order on ability to afford costs. *See* TEX. R. CIV. P. 145(g). The reporter's record from the rule 145 hearing was filed and the parties were given the opportunity to file briefs. Terrell filed a pro se brief. The court reporters did not file a brief.

### APPLICABLE LAW AND STANDARD OF REVIEW

Rule 145 of the Texas Rules of Civil Procedure exempts a party from paying court costs, including the cost of preparing the reporter's record, if the party files a Statement of Inability to Afford Payment of Court Costs. *Id*. 145(a)(b). A trial court may order payment of costs by "the declarant"—the party who filed the Statement—only when a motion challenging the Statement is filed and the declarant fails, at an evidentiary hearing, to establish her inability to afford costs. *Id*.

---

[1] Both the initial and updated Statements reflect that Terrell and her dependents do not receive public benefits, and that Terrell did not apply for representation by legal aid.

[2] Terrell's notice of appeal was assigned a new appellate cause number, 04-23-00635-CV, which was ultimately consolidated with appellate cause number, 04-23-00144-CV, the appeal from the final decree of divorce and judgment on torts.

145(e),(f). In addition, an order requiring the declarant to pay costs must be supported by detailed findings that she can afford to pay costs. *Id*. 145(f)(2). It must also state, in conspicuous type, that the declarant "may challenge [the] order by filing a motion in the court of appeals within 10 days after the date [the] order is signed." *Id*. 145(f)(4).

At the rule 145 hearing, the burden is on the declarant to prove her inability to afford the payment of court costs. *See id*. 145(f)(1). In the trial court, the test for determining indigence is whether the record as a whole shows by a preponderance of the evidence that the declarant would be unable to pay the costs, or a part thereof, or give security therefor, if she really wanted to and made a good-faith effort to do so. *Higgins v. Randall Cty. Sheriff's Office*, 257 S.W.3d 684, 686 (Tex. 2008); *Basaldua v. Hadden*, 298 S.W.3d 238, 241 (Tex. App.—San Antonio 2009, no pet.). When evaluating a contested claim of indigence, a trial court may consider certain types of financial information, including the nature and amount of the declarant's current employment income; the declarant's real and personal property; the declarant's other assets; the nature and amounts of the declarant's debts; and the nature and amount of the declarant's monthly expenses. *Higgins*, 257 S.W.3d at 686-87. "As the fact finder, the trial court is the sole judge of the credibility of the witnesses and evidence." *Strickland v. iHeartmedia*, 668 S.W.3d 34, 37 (Tex. App.—San Antonio 2022, no pet.).

We review a trial court's order on ability to afford court costs for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles or in an arbitrary or unreasonable manner. *Basaldua*, 298 S.W.3d at 241. An abuse of discretion does not occur when some evidence reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). Nor does an abuse of discretion occur when the trial court bases its decision on conflicting evidence. *In re P.M.M.*, No. 04-23-00840-CV, 2024 WL 461174, at *2 (Tex. App.—San Antonio Feb. 7, 2024, no pet.).

## TIMELINESS OF MOTION

In her brief, Terrell argues that the court reporters' motion to require her to prove her inability to afford court costs was untimely.

Terrell's initial Statement, which was filed on April 5, 2021, was not contested by the court reporters until after Terrell filed her notice of appeal and requested preparation of the reporter's record. Rule 145, which governs fees charged by the court reporter for preparation of the record, does not set a deadline for the filing of a motion to require payment of costs. *See* TEX. R. CIV. P. 145. Additionally, the comment to rule 145 provides: "The reporter is always allowed to challenge a claim of inability to afford costs before incurring the substantial expense of record preparation." TEX. R. CIV. P. 145, cmt. to 2016 change. Therefore, the trial court did not abuse its discretion by overruling Terrell's complaint that the court reporters' motion was untimely.

## MERITS OF THE RULING

In her brief, Terrell presents several complaints about the merits of the trial court's ruling, essentially arguing that she met her burden to prove her inability to afford court costs.

**The Evidence**

At the hearing, Terrell testified that she was employed "as a nurse supervisor and charge nurse of the intensive care unit ("ICU") and the entire hospital." Her job provided Terrell with opportunities to earn overtime pay. Terrell acknowledged that "at one point" her W-2s were high because she was earning crisis pay during the COVID pandemic. She claimed that her W-2s were "all the way down now." Additionally, Terrell stated that her nursing contract was set to expire soon, and she was looking for a position that would pay her as well as her current job. Terrell's current net employment income was $5,667.86 per month. In addition to her work income, Terrell received child support in the amount of $850.00 per month.

Terrell further testified that her total monthly expenses were about $9,800.00. She was renting a house for $3,000.00 a month. The house, which the appraisal district valued at $544,470.00, had a pool. In addition, Terrell admitted that she pays $1,357.00 a month for her vehicle, a 2018 Land Rover. Terrell confirmed that a few weeks after the final judgment in this case was signed, she took her children on a trip to Disney World, which cost more than $3,000.00. She also took trips to Houston and Georgia. Terrell acknowledged that she and her children eat out at restaurants, and that she pays for other forms of entertainment for them. As to litigation expenses, Terrell stated that she had retained eight different attorneys to represent her in the underlying litigation, paying them almost $200,000.00 in attorney's fees. Terrell also noted that friends had donated $21,000.00 to assist her with her litigation fees.

In her testimony, Terrell stated that she owns jewelry and other personal property valued between $20,000.00 and $30,000.00, and that she expects to receive about $179,000.00 when the house she and Duke own is sold in accordance the terms of the divorce decree. Terrell had not tried to obtain a loan by using her expected proceeds from the sale of the house.

The only other witness to testify at the hearing was Terrell's ex-husband, Duke. According to Duke, Terrell had a W-2 form showing that she had earned $225,000.00 in wages. Duke also took issue with the monthly earnings Terrell reported in her initial Statement, testifying that Terrrell was "making over $4,000 in the very week that [she] filed" her affidavit "saying [she] was indigent [and] only making $4,000.00 a month."

Finally, as to indebtedness, Terrell's updated Statement listed her debts as follows: (1) $38,800.00 in unpaid attorney's fees, (2) $34,000.00 in credit card balances and late payments, (3) $6,000.00 in unpaid utilities, and (4) $300,000.00 plus interest for a judgment owed to her ex-husband, Duke. However, the final divorce decree shows that this judgment was reduced by $2000.00 for spousal support, and that Duke owes Terrell a judgment in the amount of $15,000.00.

**Analysis**

In her brief, Terrell argues the trial court abused its discretion because her updated Statement shows that her financial situation is worse now than it was when she filled out her initial Statement in 2021. While a comparison of her Statements indicates that her reported expenses and indebtedness are greater now than in her initial Statement, so too are Terrell's reported earnings. In her initial Statement, Terrell listed her earnings as $4,690.00 per month whereas in her updated Statement, she listed her earnings as $5,667.86 per month. Additionally, in her updated Statement, Terrell reported that she has "other jobs/sources of income" that she earns from "occasional overtime that is not guaranteed." Contrary to Terrell's argument, the trial court was not required to base its ruling exclusively on a comparison of Terrell's initial and updated Statements; rather, it was entitled to consider all the evidence before it in making its determination. *See Higgins*, 257 S.W.3d at 686-87; *see also In re M.M.J.*, No. 05-22-00356-CV, 2022 WL 2582560, at *1 (Tex. App.—Dallas July 8, 2022, [mand. denied]) (listing specific factors that can be considered in determining a contest to a statement of inability, including employment history, existence of a claim that could be used as the basis for security of a loan, and ownership of valuable property that could be disposed of to secure the necessary funds).

Terrell further argues the trial court abused its discretion because it based its ruling on her decisions to make rent and car payments, to go out to eat, and to take a vacation to Disney World. However, the trial court's consideration of these factors was proper. A trial court may properly consider the nature and amount of the declarant's monthly expenses. *Higgins*, 257 S.W.3d at 686. Here, the trial court could have considered how Terrell decided to use her income. The evidence showed that Terrell was living in a house with a pool and paying $3,000.00 per month in rent. The evidence also showed that Terrell was paying $1,357.00 per month in car payments despite the fact that her ex-husband was ordered to make these payments in the divorce decree. Additionally,

the trial court could have properly concluded that the funds Terrell used for trips and entertainment could have instead been used to pay for the reporter's record. *See id.*

Terrell also argues that the trial court abused its discretion because her litigation costs arising from the underlying divorce and tort proceedings have "financially destroyed" her. In support of this argument, Terrell points to the debts listed in her updated Statement. Again, the test for determining indigence required the trial court to evaluate the record as a whole, rather than focusing on a single aspect of Terrell's financial situation. *See id.* at 686-87; *Basaldua*, 298 S.W.3d at 241.

The trial court made express findings that Terrell holds a postsecondary degree in nursing and has worked as a nurse, a crisis nurse, and a traveling nurse before and during this litigation and continues to work as an ICU nurse and a managing nurse; that Terrell's net monthly income is $6,517.00 or more depending on the amount of overtime she works; and that Terrell makes approximately four times more than the federal poverty guidelines.[3] These findings were supported by the evidence. "A trial court does not abuse its discretion in sustaining a contest to an affidavit of inability to pay when the record shows a party has the ability to earn money through future employment." *In re J.P.N.*, No. 04-17-00633-CV, 2018 WL 626526, at *1 (Tex. App.—San Antonio Jan. 31, 2018, no pet.).

Furthermore, Terrell testified that she anticipates receiving about $179,000.00 when the house that she and Duke own is sold in accordance with the divorce decree, and that she owns jewelry and personal property valued between $20,000.00 and $30,000.00. Thus, the record shows that Terrell had untapped resources from which she might be able to pay for the reporter's record. "[F]ailing to pursue and use assets that could be used to provide funds for paying for the appellate

---

[3]The reporter's record shows that during the hearing the trial court was provided with a copy of the 2023 federal poverty guidelines from the Federal Register.

record evidences the opposite of a good-faith effort." *White v. Bayless*, 40 S.W.3d 574, 576 (Tex. App.—San Antonio 2001, pet. denied); *see also In re M.M.J.*, 2022 WL 2582560, at *1) (noting that if a party has a claim that could be used to secure a loan or owns valuable property which she could dispose of and thereby secure the necessary funds, she should be required to pay costs).

"[T]he test for determining indigence is whether the record as a whole shows by a preponderance of the evidence" that Terrell "would be unable to pay the costs, or a part thereof, or give security therefor, if [s]he really wanted to and made a good-faith effort to do so." *Basaldua*, 298 S.W.3d at 241. Terrell had the burden to prove by a preponderance of the evidence that she was unable to afford court costs. *See id*. On this record, the trial court could have properly concluded that Terrell failed to meet her burden. Therefore, the trial court did not abuse its discretion in concluding that Terrell has the ability to afford court costs.

### CONCLUSION

We affirm the trial court's order. We order Terrell to (1) pay for, or make arrangements to pay for, the reporter's record no later than fifteen days from the date of this opinion; and (2) file in this court a written verification of such payments or payment arrangements no later than fifteen days from the date of this opinion. We caution Terrell that failure to pay for the reporter's record as ordered will result in consideration of her appeal without a reporter's record.

Liza A. Rodriguez, Justice